**ARMSTRONG, Plaintiff-Appellee, v. FELDHAUS, Sr., Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7190.   Decided January 10, 1950.

66

Paxton & Seasongood, Robert H. Hinds, J. Griffin Murphey, Jr., Cincinnati, for plaintiff-appellee.

Charles K. Pulse, Vernon W. McDaniel, Cincinnati, for defendant-appellant.

## OPINION

By MATTHEWS, J.:

The defendant owned a farm of 204 acres. He made an arrangement with the plaintiff, whereby the latter was to conduct the activities thereon for an indefinite period. The plaintiff was to furnish all machinery and labor and each was to furnish one-half of the seed, and they were to share equally of the yield of the crops and animals. Fifty acres of corn and fifty acres of wheat were to be planted. The defendant prepared a written agreement containing these and other terms, and both parties signed it. It provided that "All profits should be shared equally."

The plaintiff took possession and proceeded to operate the farm. As they proceeded, they verbally agreed as to many of the details. The season was late and the corn planting was not completed till the middle of June. The plaintiff says 48 acres were planted.

The writing provided that if "they became dissatisfied, he is to give 120 days notice." About six months after the date of the contract the plaintiff notified the defendant verbally that he wanted to end the relation. About two months thereafter, they reached a settlement of all matters according to the plaintiff. By this settlement, the only unfinished business between them was the gathering and division of the 48 acres of corn, which, at that time, had not fully matured. The plaintiff was to pay the cost of gathering it, and this was to be done for him by a new tenant, obtained by the defendant, who took possession of the farm on the day that the plaintiff vacated. It was this corn that formed the principal subject of dispute between these parties.

The plaintiff alleged in his petition that under the agreement made when he vacated the farm, each of the parties was to have one-half of the corn after it had been harvested by the new tenant, but he alleged that the new tenant failed to harvest it, and that when he, the plaintiff, discovered that the new tenant was allowing the harvesting time to go by without doing so, he went to the defendant about the matter and the defendant told him it was none of his concern and refused to allow the plaintiff to go upon the farm for the purpose of harvesting the corn.

The plaintiff also alleged that the defendant harvested a small part of the corn and fed it to his and the new tenant's stock and allowed the remainder to remain in the field unharvested during the winter and only salvaged a small part of it the following spring, and "that in effect the defendant converted the same to his own use."

The plaintiff also alleged that his one-half of the corn was reasonably worth $3,000.00, that, if permitted, he could have harvested the entire crop for $240.00, and that he had been damaged in the sum of $2,760.00, with interest, and that as the defendant's conduct had been intentional and malicious, punitive damages in the sum of $2,000.00 should be awarded. He prayed for judgment accordingly.

The defendant answered setting forth his version which was that the plaintiff abandoned the farm while the corn was growing, without giving the notice required by the contract, and that the defendant, "in order to save himself loss, was required to contract with a third party to operate said farm." In his amended answer, he cross-petitioned for damages caused by plaintiff's alleged failure to harvest a part of the hay on the farm.

(1) At the trial the court concluded that the plaintiff's action was in tort for conversion of the corn and the case

was presented on that theory by the plaintiff against the defendant's contention that the action was ex contractu.

The court properly charged the jury on the measure of compensatory damages, whether the action be regarded as ex delicto or ex contractu, and then told the jury that it could add to that in the event it found for plaintiff, and also that "if that wrongful taking was maliciously done, or, in other words, done in a wanton and reckless manner, it could assess punitive damages."

The jury returned a verdict for $4,980.80, which was the full amount prayed for with interest. The court overruled defendant's motion for judgment notwithstanding the verdict, but granted his motion for a new trial. Upon the plaintiff's motion to set aside the order granting a new trial and for a reconsideration of defendant's motion for a new trial, the court made an order setting aside the order granting a new trial, and upon reconsideration of the motion for a new trial found the verdict excessive to the extent of $2,900.00, and, upon the plaintiff accepting a remittitur in that sum, overruled the motion for a new trial and entered judgment in the sum of $2,080.80. All this occurred at the same term of court and so while the court still had power to correct its journal in the exercise of a sound discretion. We do not find any abuse of discretion in this case.

As the jury found for the full amount of the plaintiff's prayer, it is manifest that it found that his actual damage was $2,760.00, with interest, and as the court reduced the verdict to $2,080.80, it is manifest that the judgment is for less than the compensatory damage suffered by the plaintiff, as found by the jury. However, the court in ordering a remittitur did not indicate what items were being eliminated and we have no way of knowing in what respect the court found the verdict to be excessive.

Many errors are assigned, but most of them stem from the defendant's contention that the plaintiff's action was for breach of contract and that in any event it was not the kind of case in which the awarding of punitive damages is allowable.

The plaintiff made no attempt in his petition to classify his cause of action—and the law did not require him to do so. Even if he had done so and made a mistake, he would not have been bound thereby. In 31 O. Jur., 573 and 574, it is said:

"Undoubtedly a pleading should proceed upon some definite theory, but generally speaking the theory is not required to

be stated in the pleading except as it is disclosed by the facts themselves. Moreover, under the Code, although the pleader may be mistaken in his theory,—in what he conceives the nature of his cause of action to be,—he nevertheless is entitled to relief if the facts alleged show him to be entitled to relief of a different nature than that which he asked for."

The important thing is the allegations of fact. The litigant is entitled to the relief which the facts justify regardless of his theory of his case. However, if it should be necessary to find a theory in the petition, we think an analysis of the allegations justify the conclusion that the pleader's theory was that it was an action ex delicto for conversion. To be sure there were averments of the terms of a contract but the effect of all the allegations was to disclose that the plaintiff was the owner of a one-half interest in a field of corn standing on defendant's land, title to which he could get only by the permission of the defendant, and that although there may have been an implied license to enter, it was revocable at defendant's will and he, defendant, refused to allow the plaintiff to exercise the license and took advantage of his ownership of the land to exclude the plaintiff and appropriate in part and waste the balance of the plaintiff's corn.

Forms of action were abolished by the Code of Civil Procedure. It may be that prior thereto the plaintiff could have sued in either contract or tort, but whether in one or the other, the measure of his compensatory damage would have been the same.

In **Ketcham v. Miller, 104 Oh St, 372,** the court held that punitive damages were not recoverable in an action for breach of contract. The allegations in the amended petition in that case rather clearly disclosed that the pleader's intent was to state a cause of action for breach of contract. There was no express prayer for punitive damages. In the case at bar, the allegations are that the original contract had been performed, and the rights of the parties adjusted, leaving the plaintiff the owner of a one-half interest in this corn, which the defendant made it impossible for the plaintiff to harvest by refusing him access to it—and the plaintiff expressly prayed for punitive damages. If it is necessary to psycho-analyse the pleader, we find, as best we can, that his intent was to charge the defendant with the commission of a wrong or tort.

The question is whether the facts justified the awarding of punitive damages, should the jury conclude to do so.

While there is a great conflict in the authorities as to

the soundness of the doctrine of allowing punitive damages in any civil action, Ohio is committed to the rule that in certain cases involving fraud, malice, insult, or wanton, or reckless disregard of the legal rights of others, the awarding of such damage is permissible. In **Saberton v. Greenwald, 146 Oh St, 414**, it is said in the second paragraph of the syllabus, that:

"In an action to recover damages for a tort which involves the ingredients of fraud, malice or insult, a jury may go beyond the rule of mere compensation to the party aggrieved and award exemplary or punitive damages. (**Roberts v. Mason, 10 Oh St, 277**, approved and followed.)"

And, at page 425:

"Punitive damages also are recoverable in many cases of actions ex delicto where the defendant's conduct shows a wanton or reckless disregard of the legal rights of others, even where the gist of the cause of action is negligence."

Again, at page 426:

" 'Where the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages upon proper allegations and proof. As sometimes stated, exemplary damages are recoverable for a tort committed in connection with, but independently of, the breach of contract, where the essentials of an award of such damages are otherwise present, the allowance of such damages being for the tort and not for the breach of contract. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort."

In 53 Am. Jur., 895, the author says:

"Many courts recognize that exemplary or punitive damages, which in most jurisdictions are recoverable in tort actions involving ingredients of malice, fraud, or wanton and reckless disregard of the plaintiff's rights, in addition to compensatory damages for the injury done, are properly

recoverable in an action for the conversion of personal property, or, at least, to recognize the propriety of submitting the question of the award of such damages in such action to the jury. This result has been reached where the act of the defendant was accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, wilful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury."

In addition to Katchman v. Miller, supra, the defendant relies upon **Stockyard Bank v. Seal, 27 Oh Ap, 179,** and Harrison v. Spitz, 16 C. C. (N. S.) 493. We find nothing in either of these cases inconsistent with our conclusion that the plaintiff alleged a cause of action for conversion and that punitive damages are recoverable in such an action.

So we conclude that the court did not err in its instructions to the jury on the subject of damages, including punitive damages.

However, if we are wrong about this, there are other rules of appellate review that restrain us from predicating a reversal on this ground, and one is that every reasonable presumption must be indulged in favor of the validity and regularity of the judgment under review, and that only prejudicial errors that clearly appear upon the record will be considered.

As already noted, this verdict was for the full amount. It included $2,000.00—no more and no less—as a penalty, and the rest was compensatory damage. The court granted a remittitur of $2900.00, without indicating whether he found the punitive damages unjustified as a matter of law and the compensatory damages excessive to the extent of $900.00, or whether there was some other basis for the reduction. In this situation under the rule just stated if it should be necessary to sustain this judgment, the court would presume that the court intended to remit the punitive damages entirely and to remit $900.00 from the amount of the compensatory damage found by the jury. That would leave only the question of whether there was any error in the manner of the submission of the issues relating to the actual damages and whether the evidence of actual damage supports the judgment.

In 3 Am. Jur., 685 and 686 (sec. 1176) it is said:

"When a case has been fully and carefully tried, and the only errors found on appeal require the plaintiff's recovery of punitive damages to be disallowed, substantial justice demands that the plaintiff should be given an opportunity to accept

the reduced verdict, in lieu of reversal on account of errors in instructions on the question of punitive damages."

For these reasons, we find no reversible error in the judgment in relation to the original inclusion of a penalty as an allowable element of damage.

(2) The defendant-appellant assigns as error the refusal of the court to give a special charge, to the effect that there was no evidence of intentional and malicious wrongdoing and, therefore, punitive damages should not be considered. We are of the opinion that there was evidence of intentional and malicious wrong and, therefore, the court was justified in refusing to give the special charge. Furthermore, from what has already been said, it can be seen that whatever prejudice would otherwise have resulted has been removed by the remittitur.

(3) The next assignment of error is that the court erred in refusing to give a special charge, that if the jury found that the plaintiff abandoned the farm, in violation of the written agreement, it should find for the defendant. We think the court properly refused to give this charge, for the reason that there was no substantial evidence upon which to predicate it.

(4) Many other assignments of error raise in one form or another the question of whether the cause of action is ex contractu or ex delicto, and whether the issue of punitive damages should have been submitted to the jury. We believe that what we have said sufficiently indicates our reasons for our conclusion that no prejudicial error was committed by the court in these respects.

(5) The remaining question is whether the evidence of actual damage is sufficient to sustain the judgment.

The plaintiff prayed for $2,760.00 as compensatory damages, with interest. The jury awarded him $2,980.80 compensatory damages, which was the full amount prayed for with interest. The judgment is for $2,080.80. There was abundant evidence that the plaintiff's one-half of the corn had a net worth of more than the amount of the judgment.

For these reasons, the judgment is affirmed.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.