[Cite as *Beckloff v. Amcor Rigid Plastics USA, L.L.C.*, 2017-Ohio-4467.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Michael Beckloff

Appellant

v.

Amcor Rigid Plastics USA, LLC
and Chris Robinson

Appellees

Court of Appeals No. S-16-041

Trial Court No. 15 CV 1026

**DECISION AND JUDGMENT**

Decided: June 23, 2017

* * * * *

Francis J. Landry and Katherine A. Pawlak, for appellant.

Margaret Mattimoe Sturgeon, John F. Birmingham, Jr. and
Felicia S. O'Connor, for appellees.

* * * * *

**MAYLE, J.**

{¶ 1} In this accelerated appeal, plaintiff-appellant, Michael Beckloff, appeals the September 16, 2016 judgment of the Sandusky County Court of Common Pleas, granting summary judgment in favor of defendants-appellants, Amcor Rigid Plastics USA, LLC

and Chris Robinson (collectively "Amcor").  For the reasons that follow, we affirm the trial court judgment.

## I.  Background

{¶ 2} On February 27, 2012, Amcor hired Michael Beckloff, then 61, as a production supervisor at its Bellevue, Ohio facility.  Amcor's human resources manager, Thomas Hall, and its operations manager, Chris Robinson, participated in the decision to hire Beckloff.  As a production supervisor, Beckloff reported to Robinson.

{¶ 3} Beckloff had extensive past experience as a supervisor, however, problems arose with his performance.  On October 4, 2013, Robinson placed Beckloff on a performance improvement plan ("PIP").  Under the terms of the plan, Beckloff was required to show improvement in the areas of quality and housekeeping, developing employees, addressing employee issues, and contributing to best practices and ideas.  The plan provided that Beckloff had 90 days to meet the objectives identified in the plan, and that Robinson would meet with him twice during that period to assess his progress.  A November 15, 2013 follow-up note indicated that Robinson was not satisfied with Beckloff's progress, but no further disciplinary action was taken at that time.

{¶ 4} In November of 2014, supervisors, including Beckloff, were asked to complete a survey ranking their team members' proficiency in safety, quality, and startup/shutdown skills.  Beckloff ranked his team members the lowest.  These results prompted follow-up conversations with Beckloff to discuss his concerns, particularly in the area of safety where his team scored the worst.  Beckloff identified a number of

2.

safety failures that he had observed. His superiors questioned why he had not issued written corrective action notices upon observing safety violations, and they impressed upon him the importance of doing so. They perceived Beckloff's failure to discipline employees for safety violations as a lack of leadership and refusal to take ownership of his supervisory responsibilities.

{¶ 5} In the months that followed, Beckloff himself received a number of corrective action notices. On January 7, 2015, Robinson issued Beckloff a corrective action notice for failing to properly report and resolve product defects that arose during one of his shifts. On June 24, 2015, Robinson issued another corrective action notice because Beckloff failed to have his production line ready for a planned trial, thereby setting the trial back by four hours, interrupting the schedules of several corporate engineers, and delaying production. And on August 19, 2015, Robinson issued another corrective action notice after 170,430 defective bottles were produced during Beckloff's shift.

{¶ 6} Beckloff received sub-par mid-year and annual evaluations in 2015. In February, in his mid-year performance evaluation, Beckloff was rated as "significantly below expectations" or "improvement needed" in a number of categories, including implementing team concept, contributing to the facility's palletizer staffing project, leading self, leading teams, interpersonal savvy, operational execution, teamwork, social responsibility, and innovation. Similar deficiencies were identified in his annual performance evaluation in August. His performance was rated as "significantly below

3.

expectations" or "needs improvement" in the areas of "reduction in HFI[1] in both injection and blow molding," contributing to the facility's palletizer staffing project, implementing team concept, leading self, leading teams, interpersonal savvy, operational execution, teamwork, social responsibility, and innovation.

{¶ 7} Because of his score of 2.0 out of 5.0 on his annual evaluation, Beckloff was placed on another PIP on August 31, 2015. Under the terms of this PIP, Beckloff was expected to achieve the following objectives:

1. Zero Customer Complaints as a result of operator mistakes.

2. Reduction in HFI.

3. 35% reduction in product making it to the warehouse without tickets or incorrect ticket.

4. Successfully run a Process Improvement Team with the goal of creating a Palletizer Training Program.

{¶ 8} The PIP provided 90 days for Beckloff to meet these objectives, and progress meetings were scheduled for October 2, 2015, and December 2, 2015. The PIP specified that "[i]n addition to meeting the specific objectives outlined in this plan, during this 30/60/90 day period, and then thereafter on an ongoing basis, you must demonstrate a commitment to your job and to the Company's values." It also warned:

If you fail to make the required improvement in the areas identified at each interval, your employment will be terminated at the end of your

---

[1] "HFI" is an acronym used at Amcor that stands for "hold for inspection."

4.

plan period.  However, the Company reserves the right to terminate your employment during the period if it becomes clear you are not making sufficient progress, or for business reasons unrelated to your performance (e.g., misconduct, lack of work).

{¶ 9} On September 3, 2015, Beckloff gave his team approval to run "12 totes of 51.2 gm preforms with a barrier defect."  That same day, Beckloff observed a pallet operator walking on the rollers on a section of pallet conveyor, yet failed to discipline him.  On September 8, 2015, Beckloff noted in his end-of-shift report that there had been a fire at one of the presses, but he failed to notify anyone, perform an investigation, or complete an incident report.  And also on September 8, 2015, Beckloff gave approval for his team to run 32-ounce bottles "with out of spec section weights."

{¶ 10} According to Amcor, these four incidents, occurring just days after Beckloff's second PIP was issued, led it to terminate Beckloff's employment on September 11, 2015.  Beckloff claims, however, that these incidents were merely pretext for discrimination.

{¶ 11} On October 16, 2015, Beckloff filed a complaint against Amcor and Robinson alleging four claims:  (1) age discrimination in violation of R.C. 4112.02(A); (2) wrongful discharge in violation of public policy; (3) intentional infliction of emotional distress; and (4) as against Amcor only, negligent hiring, retention, and supervision.  He sought punitive damages.

{¶ 12} After several witnesses were deposed and discovery was exchanged, Amcor moved for summary judgment on all of Beckloff's claims. In a decision journalized on September 16, 2016, the trial court granted summary judgment in Amcor's favor on all claims. Beckloff appealed. He assigns the following four errors for our review:

I. The trial court committed reversible error in granting summary judgment to defendants Amcor and Robinson when questions of material fact remained over the existence of a prima facie case of age discrimination.

II. The trial court committed reversible error in granting summary judgment to defendants Amcor and Robinson when questions of material fact remained over whether Appellant's termination was in violation of the public policy of the State of Ohio.

III. The trial court committed reversible error in granting summary judgment to defendants Amcor and Robinson when questions of material fact remained over whether Appellant's termination and the treatment of him on the job, rose to the level of outrageous conduct required by the tort of intentional infliction of emotional distress.

IV. The trial court committed reversible error in granting summary judgment to defendant Amcor when questions of material fact remained over whether Defendant was negligent in hiring, retaining, and supervising Defendant Robinson.

6.

## II. Standard of Review

{¶ 13} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 14} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A

7.

"material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Law and Analysis

{¶ 15} The trial court granted summary judgment to Amcor as to each of Beckloff's four claims. As to his age discrimination claim, the court held that Beckloff cannot establish a prima facie case of age discrimination; he was terminated for a legitimate, nondiscriminatory reason—i.e., poor performance; and he is unable to establish that the reasons offered for his termination were pretextual. It found that there was no genuine issue of material fact to support Beckloff's claim for wrongful termination in violation of public policy. It found that Beckloff's intentional infliction of emotional distress claim fails because of the absence of outrageous behavior. It found that there was no genuine issue of material fact to support Beckloff's claim for negligent hiring, retention, and supervision. And it found that Beckloff's claim for punitive damages fails due to the absence of malice.

{¶ 16} Beckloff claims that genuine issues of material fact remain as to each claim, thus the trial court erred in granting summary judgment to Amcor. We address each of Beckloff's assignments of error in turn.

8.

## A. Age Discrimination

{¶ 17} Under R.C. 4112.02(A), it is an unlawful discriminatory practice "[f]or any employer, because of the * * * age of any person, * * * to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." In his first assignment of error, Beckloff argues that the trial court erred in granting summary judgment to Amcor and Robinson on his claim for age discrimination.

{¶ 18} A discrimination claim may be proven by direct evidence or by circumstantial evidence. *Silberstein v. Montgomery Cty. Community College Dist.,* 2d Dist. Montgomery No. 23439, 2009-Ohio-6138, ¶ 32. "To establish a discrimination claim based upon circumstantial evidence, a plaintiff must initially demonstrate a prima facie case of discrimination." *Id.,* quoting *Temple v. City of Dayton,* 2d Dist. Montgomery No. 20211, 2005-Ohio-57, ¶ 85. This requires the plaintiff to show that (1) he was a member of a statutorily protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class. *Starner v. Guardian Indus.*, 143 Ohio App.3d 461, 471, 758 N.E.2d 270 (10th Dist.2001), citing *Tessmer v. Nationwide Life Ins. Co.,* 10th Dist. Franklin No. 98AP-1278, 1999 Ohio App. LEXIS 4633 (Sept. 30, 1999).

{¶ 19} Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that it had a legitimate, nondiscriminatory reason for its action.

9.

*Silberstein* at ¶ 34. "If the employer articulates such a reason, the employee must show that the articulated reason was merely a pretext for discrimination." *Id.,* quoting *Temple* at ¶ 85. To establish pretext, the plaintiff must demonstrate that the articulated reason "(1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct." (Internal citations omitted.) *Dautartas v. Abbott Labs.,* 10th Dist. Franklin No. 11AP-706, 2012-Ohio-1709, ¶ 28. "The ultimate inquiry in an employment-based age discrimination case is whether the plaintiff was a victim of intentional discrimination and was subject to an adverse employment decision *because of* his or her age, i.e., whether age was the 'but for' cause of the employer's adverse decision." (Emphasis in original.) *Miller v. Potash Corp. of Sask., Inc.*, 3d Dist. Allen No. 1-09-58, 2010-Ohio-4291, ¶ 46.

{¶ 20} The trial court concluded that Beckloff cannot establish a prima facie case of age discrimination, but it neglected in its decision to identify which element Beckloff failed to satisfy. Amcor does not dispute that Beckloff is a member of a protected class, was qualified for the production supervisor position, and was terminated. And while it is not clear who was hired to replace him, Beckloff presented evidence that in the weeks following his termination, Amcor hired four supervisors, all of whom were 10-35 years younger than Beckloff. We, therefore, disagree with the trial court that Beckloff failed to establish a prima facie case of discrimination.

{¶ 21} Nonetheless, we agree with the trial court's conclusion that Beckloff was terminated for a legitimate, non-discriminatory reason. Amcor presented evidence that

between 2013 and 2015, Beckloff was given three corrective action notices,[2] was placed on two PIPs, and received below-average ratings on his 2015 performance evaluations. Just days after his most recent PIP was implemented—when Beckloff knew that his performance was being scrutinized and his job was in jeopardy—Beckloff made four significant errors. He twice provided approval for his team to run large quantities of defective products. He failed—once again—to discipline an employee for a serious safety violation. And he failed to report, investigate, and file an incident report relating to a fire that occurred under his watch. These events furnished Amcor with a legitimate, non-discriminatory reason to terminate Beckloff's employment.

{¶ 22} Beckloff claims, however, that these reasons are merely pretextual and that the real reason for his termination was his age. In support of this contention, he insists that (1) an ageist remark made by Hall demonstrates Amcor's true motivation for his termination, (2) the incidents that occurred on September 3 and 8 were unrelated to the objectives identified in the PIP, (3) he was not granted the time specified in the PIP for improving his performance, and (4) Amcor's hiring of four substantially younger supervisors evidences a pattern of discrimination.

{¶ 23} The "ageist" remark that Beckloff references was made on November 17, 2014, when Beckloff met with Hall and Robinson about the results of Amcor's survey of its supervisors assessing team members' skills. Beckloff claims that at that meeting, Hall

---

[2] One of the corrective action notices was issued on August 19, 2015, and was noted to be a "final written notice." It warned that further incidents could result in termination of employment.

asked if he had a problem reporting to Robinson because of the age difference between the two. Amcor clarifies that what actually happened was that when approached by Hall and Robinson about the results of the survey, Beckloff remarked that he had been working as a supervisor longer than Hall and Robinson had been alive. It was at that point—in response to Beckloff's push-back—that Hall asked whether he had a problem reporting to Robinson because of the difference in age.

{¶ 24} Beckloff does not challenge Amcor's characterization of the context in which the age comment was made, and we infer no age animosity given the context. Hall's comment, therefore, fails to demonstrate that Beckloff was terminated because of his age. Indeed, "[o]ne isolated comment, remote in time from the adverse employment action, is insufficient to create an inference of pretext." *Crooks v. Consol. Stores Corp.*, 10th Dist. Franklin No. 99AP-29, 1999 Ohio App. LEXIS 6490, *20 (Dec. 21, 1999). *See also Pla v. Cleveland State Univ.*, Ct. of Cl. No. 2014-00918, 2016-Ohio-3150, ¶ 23 (finding no inference of age bias from single question from employer about employee's plan for retirement); *Brewer v. Cleveland City Schs. Bd. of Educ.*, 122 Ohio App.3d 378, 384, 701 N.E.2d 1023 (8th Dist.1997) (holding that "[s]ummary judgment will be affirmed when the plaintiff bases her claim of discrimination on one isolated comment by her employer and nothing more.").

{¶ 25} As for Beckloff's claim that the errors on September 3 and 8 were unrelated to the objectives identified in the PIP and that he was not given the time granted in the PIP by which to improve, Amcor insists that Beckloff was afforded extensive

12.

coaching over the course of his three years of employment. It maintains that instead of trying to improve his performance, Beckloff effectively gave up. It contends that it had addressed quality issues and Beckloff's failure to properly handle safety violations through multiple disciplines and PIPs, and the errors that led to Beckloff's termination were directly related to these deficiencies. And it emphasizes that the PIP specifically provided that the company reserved the right to terminate him before the PIP expired.

{¶ 26} Beckloff cites *Montell v. Diversified Clinical Servs.* 757 F.3d 497 (6th Dist.2014), for the proposition that pretext is established where an employer terminates an employee before giving him or her the time allotted in a PIP by which to achieve the requirements of the plan. He argues that similar to *Montell,* the PIP provided him with a timeframe for improving his performance, yet Amcor terminated him before he had the chance to demonstrate improvement.

{¶ 27} In *Montell,* the plaintiff had been given a written final warning which provided 30 days to improve her performance in a number of areas. The plaintiff complained of sexual harassment after receiving the final warning, and the day after her supervisor learned of this, he forced her to resign or be terminated. The court found that there was a question of fact whether plaintiff's forced resignation was in retaliation for having made a report of sexual harassment. Important to the court's conclusion was the fact that there had been no intervening complaints about the plaintiff's performance between the time the final warning was issued and the time she was forced to resign.

13.

{¶ 28} The facts here are distinguishable from *Montell* because (1) there were four incidents that occurred in quick succession within days of Beckloff's PIP being implemented, suggesting to Amcor that Beckloff had given up and was not even trying; (2) the single allegedly "ageist" comment complained of by Beckloff had been made ten months before the PIP; and (3) the PIP explicitly stated that Beckloff could be terminated before the plan expired. *Montell* provides no support under the facts of this case.

{¶ 29} Nor do we find any merit to Beckloff's claim that Amcor's hiring of four substantially younger supervisors somehow evidences a pattern of discrimination. Although evidence that Beckloff was allegedly replaced by a younger person is relevant to his initial burden of establishing a prima facie case of age discrimination, the simple fact that Amcor hired several people who are younger than Beckloff does not demonstrate that Amcor's articulated reason for Beckloff's termination was a pretext for discrimination.

{¶ 30} In addition to this, Amcor points out that at his deposition, Beckloff agreed that his allegation of age discrimination was based on pure speculation, and he confirmed that Robinson is the only person who he believes discriminated against him on the basis of age. Amcor urges, and we agree, that a plaintiff's own belief or speculation is not enough to support a claim for discrimination. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir.1997), quoting *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir.1986) ("Mere personal belief, conjecture and speculation are insufficient to support an inference of age discrimination."). Moreover, Robinson did not make the decision to

14.

terminate Beckloff's employment; Hall and Jennifer Thompson, the plant manager, made that decision. Beckloff has submitted no evidence that would impute Robinson's alleged animus to Hall and Thompson. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir.1998), quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 104 L.Ed.2d 268, 109 S.Ct. 1775 (1989) (O'Connor, J., concurring) ("'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden of demonstrating animus.'"). Thus the only person Beckloff claims discriminated against him did not make the decision to terminate him.

{¶ 31} Amcor also submits that Ohio recognizes a "same actor inference." Under the same actor inference, a court infers a lack of discrimination where the same individual both hired and fired the employee. *Pirsil v. Int'l Steel Grp. - Cleveland*, 8th Dist. Cuyahoga No. 85056, 2005-Ohio-3013, ¶ 15. It says that here, Robinson took part in the decision to hire Beckloff when Beckloff was 61 years old and already a member of the protected class. So even assuming that Robinson took part in the decision to terminate Beckloff, under the same actor inference, a lack of discrimination can be inferred because Robinson also hired Beckloff. We agree with Amcor that this, too, is further evidence that discriminatory intent played no role in Beckloff's termination.

{¶ 32} Finally, Beckloff, citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396 (6th Cir.2008), argues that under a "mixed-motive framework," a claim of discrimination under R.C. 4112.02(A) will survive at the summary judgment stage "where both legitimate and illegitimate reasons motivated the employer's decision." He

15.

acknowledges that it is "less than settled" whether a mixed-motive claim is viable in Ohio.

{¶ 33} We need not consider whether Ohio recognizes a "mixed motive" discrimination claim because, in this case, we find that Beckloff failed to present evidence of even an "illegitimate" reason for his termination. He cites a single statement as allegedly "ageist." Particularly given the context in which it was made, this single statement is insufficient to establish that age animus played any role in his termination. This is especially true given that the statement was made ten months before his employment was terminated.

{¶ 34} Accordingly, we find Beckloff's first assignment of error not well-taken.

### B. Wrongful Discharge in Violation of Public Policy

{¶ 35} In Ohio, employment relationships are governed by the common-law doctrine of employment-at-will. *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 11. The termination of an at-will employee usually does not give rise to an action for damages. (Citations omitted.) *Id.* But if an employee is discharged in contravention of a clear public policy articulated in the Ohio or U.S. Constitution, federal or state statutes, administrative rules and regulations, or common law, "a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Id.,* citing *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraph three of the syllabus; *Greeley v. Miami Valley Maintenance Contrs., Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph one of the syllabus.

16.

In his second assignment of error, Beckloff argues that the trial court erred in granting summary judgment to Amcor on his claim for wrongful termination in violation of public policy.

{¶ 36} To prevail on a claim of wrongful discharge in violation of public policy, a plaintiff must show:

1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

(Emphasis sic.) (Internal citations and quotations omitted.) *Dohme* at ¶ 12-16. The first and second elements are issues of law to be determined by the court; the third and fourth elements are questions of fact to be determined by the fact-finder. *Id.* at ¶ 17.

{¶ 37} In support of his claim for wrongful termination in violation of public policy, Beckloff points to an incident that occurred on August 17, 2015. He claims that he experienced extreme swelling to the left side of his face and was concerned that he

was having a reaction to chemicals being used in the plant. He intended to seek medical treatment when his shift ended, but as he attempted to leave work, Robinson stopped him and called him into a meeting. He says that he told Robinson three times that he needed to leave to seek medical treatment, but Robinson delayed him from leaving and acted as though he was going to slam the door shut. He describes that Robinson had a look of "pure anger" on his face and Beckloff feared that Robinson was going to hit him. He maintains that after that incident, he was reluctant to meet with Robinson alone and communicated this to Amcor.

{¶ 38} Beckloff characterizes Robinson as an "outwardly hostile supervisor," and he contends that he was terminated for reporting his concerns over meeting with him. He maintains that the timing of his termination—a month after reporting his "fear" of Robinson—establishes a causal connection. He insists that the public policies embodied in R.C. 4101.11 (duty of employer to protect employees and frequenters) and R.C. 4101.12 (duty of employer to establish safe place of employment) have been violated by his termination. He frames the issue as one of "workplace safety."

{¶ 39} Amcor contends that Beckloff cannot establish any of the elements required for a claim of wrongful discharge in violation of public policy. First, it argues, with respect to the jeopardy and clarity elements, the sources cited by Beckloff in support of the alleged policy favoring workplace safety are too broad. It also argues that Beckloff failed to comply with the requirements of R.C. 4113.52, governing the process for reporting an employer's violation of law, because he simply alleged that certain practices

18.

were "unsafe," not illegal. And it insists that Beckloff never made clear that he was invoking a governmental public policy as the basis of his complaint as opposed to simply his own self-interest.

{¶ 40} Amcor further claims that Beckloff cannot establish the overriding justification or causation elements because Amcor terminated Beckloff for persistent and well-documented performance problems. It insists that Beckloff's own testimony undermines his claim that he was terminated because of his safety complaints. Specifically, at his deposition, Beckloff was asked if he believed that his communication of his concerns about safety played a role in his termination. He responded "shouldn't have" and "I can't believe it did, no."

{¶ 41} Amcor seems to assume that Beckloff's wrongful termination claim is premised on R.C. 4113.52. While Beckloff cited this statute in his complaint, he does not cite this statutory provision in his summary judgment and appellate briefs; he relies on only R.C. 4101.11 and 4101.12 as establishing the public policy allegedly violated here. Presumably, this is because Beckloff failed to strictly comply with the requirements of R.C. 4113.52 and, therefore, cannot rely on the public policy embodied in that statute as the basis for his wrongful discharge in violation of public policy claim. *See, e.g., Galyean v. Greenwell*, 4th Dist. Washington No. 05CA11, 2007-Ohio-615, ¶ 53.

{¶ 42} Nevertheless, Beckloff's claim still fails under the jeopardy element. The notice provision of the jeopardy element requires that "the employee must at least have made it clear to his employer that he is invoking a governmental policy as the basis of his

19.

complaint, not just his own self-interest." *Jermer v. Siemens Energy & Automation, Inc.,* 395 F.3d 655, 659 (6th Cir.2005). *See also Hernandez v. Pitt Ohio Express, LLC*, N.D.Ohio No. 3:11 CV 1507, 2012 U.S. Dist. LEXIS 114241, *6-8 (Aug. 14, 2012). The Sixth Circuit explained "[i]n exchange for granting employees [the public policy] protection, employers must receive notice that they are no longer dealing solely with an at-will employee, but with someone who is vindicating a governmental policy." *Jermer* at 659. There is no evidence that Beckloff put Amcor on notice that he was attempting to invoke a governmental policy and not simply his own self-interest. Summary judgment in favor of Amcor was therefore, appropriate.

{¶ 43} Accordingly, we find Beckloff's second assignment of error not well-taken.

## C. Intentional Infliction of Emotional Distress

{¶ 44} In his third assignment of error, Beckloff argues that the trial court erred in granting summary judgment to Amcor and Robinson on his claim for intentional infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgmt.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994). Liability will be found "only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Surry*

20.

*v. Cuyahoga Cmty. Coll.*, 149 Ohio App.3d 528, 2002-Ohio-5356, 778 N.E.2d 91, ¶ 33-34 (8th Dist.), citing *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375, 453 N.E.2d 666 (1983).

{¶ 45} "The bar is high for proof of a claim of intentional infliction of emotional distress." *O'Malley-Donegan v. Metrohealth Sys.*, 8th Dist. Cuyahoga No. 104544, 2017-Ohio-1362, ¶ 37. In fact, in *Strausbaugh v. Ohio Dept. of Transp.*, 150 Ohio App.3d 438, 2002-Ohio-6627, 782 N.E.2d 92, ¶ 15 (10th Dist.), the Tenth District explained this high bar as follows:

> [M]ajor outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. Only conduct that is truly outrageous, intolerable and beyond the bounds of decency is actionable; persons are expected to be hardened to a considerable degree of inconsiderate, annoying and insulting behavior. Insults, foul language, hostile tempers, and even threats must sometimes be tolerated in our rough and tumble society. (Internal citations omitted.)

{¶ 46} Beckloff claims that "termination of employment with more, can constitute the outrageous conduct required for a claim of intentional infliction of emotional distress." He insists that there is at least a question of fact whether the August 17, 2015 incident constituted extreme and outrageous behavior. And he contends that the incident caused him concern for his safety.

21.

**{¶ 47}** In support of his position, Beckloff cites *Stanfield v. U.S. Steel Corp.,* 9th Dist. Lorain No. 12CA010213, 2013-Ohio-2378, ¶ 30 (9th Dist.). In *Stanfield,* the plaintiff's intentional infliction of emotional distress claim was premised on an incident where a department manager screamed at her and accused her of lying about her condition following a workplace injury. She described that he was "all red in the face with his veins sticking out," and she claimed that afterward, she was a "basket case." *Id.* at ¶ 24, 26, 30. She claimed that she broke out in hives and rashes and never wanted to leave her house. The trial court granted summary judgment to the defendant on plaintiff's intentional infliction of emotional distress claim, but the appeals court reversed, finding that plaintiff presented evidence sufficient to create a question of fact as to whether the manager's conduct was extreme and outrageous. Beckloff argues that the facts in *Stanfield* are analogous to the facts here, therefore, summary judgment in favor of Amcor was improper.

**{¶ 48}** Amcor argues that as a matter of law, mere discipline and termination from employment are insufficient to sustain a claim of intentional infliction of emotional distress, even if coupled with derogatory remarks. It maintains that Beckloff was merely counseled about his performance; Robinson never physically assaulted him, never used profanity, never called him names, and never used derogatory terms.

**{¶ 49}** Amcor cites *Surry*, 149 Ohio App.3d 528, 2002-Ohio-5356, 778 N.E.2d 91, where the court held that plaintiff's intentional infliction of emotional distress claim failed as a matter of law. There, the plaintiff alleged that his supervisor belittled him

22.

about his age, referring to him as a "dinosaur," and a "relic," and he was terminated from his job after being accused of sexual misconduct by a 16-year-old girl. *Id.* at ¶ 34. The court found that no reasonable jury could have concluded that defendants' conduct was extreme and outrageous.

{¶ 50} We reach the same conclusion as the *Surry* court. The conduct here simply does not rise to the level of extreme and outrageous. And Beckloff's momentary concern that Robinson could hit him and his reluctance to meet with him alone do not rise to the level of serious emotional distress.

{¶ 51} Accordingly, we find Beckloff's third assignment of error not well-taken.

### D. Negligent Hiring, Retaining, or Supervision

{¶ 52} In his fourth assignment of error, Beckloff argues that the trial court erred in granting summary judgment to Amcor on his claim for negligent hiring, retention, or supervision. To establish a claim for negligent hiring, retention, or supervision, a plaintiff must show "(1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employer's act or omission causing plaintiffs injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Osborne v. Douglas*, 6th Dist. Lucas No. L-12-1331, 2013-Ohio-5072, ¶ 90.

{¶ 53} Beckloff claims that given the concerns he expressed for his safety and the facts surrounding his dealings with Robinson, Amcor was negligent in retaining

23.

Robinson. Amcor responds that a simple disagreement with a supervisor—even where the supervisor could be found to be unprofessional, obstructionist, or adversarial—is insufficient to show incompetence or sustain a claim for negligent retention. *Louscher v. Univ. of Akron*, Ct. of Cl. No. 2015-00212, 2016-Ohio-4679, ¶ 26. It maintains that Robinson has a college degree and past manufacturing experience and, as such, is competent to act as operations manager of a plastics manufacturing facility. It emphasizes that there have been no other complaints to management or human resources about Robinson. And it claims that Beckloff has not been damaged by any alleged negligence of Amcor. It argues that Beckloff's negligent retention claim, therefore, fails. We agree.

{¶ 54} Given our conclusion with respect to Beckloff's other claims, we find that no genuine issue of material fact exists, and the trial court properly granted summary judgment to Amcor on Beckloff's claim for negligent retention.

{¶ 55} Accordingly, we find Beckloff's fourth assignment of error not well-taken.

## IV. Conclusion

{¶ 56} Beckloff failed to present evidence sufficient to create a genuine issue of material fact in support of his claims of age discrimination, wrongful termination in violation of public policy, intentional infliction of emotional distress, and negligent

retention.  We, therefore, find his four assignments of error not well-taken and affirm the September 16, 2016 judgment of the Sandusky County Court of Common Pleas.  The costs of this appeal are assessed to Beckloff under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE