[Cite as *Feltner v. Whitehouse*, 2018-Ohio-2337.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Richard Feltner

Court of Appeals No. L-17-1277

Appellant

Trial Court No. CI0201702389

v.

Village of Whitehouse, et al.

**DECISION AND JUDGMENT**

Appellees

Decided: June 15, 2018

* * * * *

Michael D. Portnoy, for appellant.

Teresa L. Grigsby, for appellees.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Richard Feltner, appeals the October 27, 2017 judgment of the Lucas County Court of Common Pleas granting dismissal in favor of appellees, the village of Whitehouse, Deputy Chief Todd Kitzler, Chief Mark McDonough, Mayor Donald Atkinson, and Administrator Jordan Daugherty. Finding no error, we affirm.

**Assignment of Error**

{¶ 2} Appellant sets forth the following assignment of error:

1. The Trial Court committed prejudicial error to Plaintiff-Appellee (sic) when dismissing his amended complaint pursuant to Ohio Civil Rule 12 (b) (6) when the amended complaint satisfied the drafting requirements of Ohio Civil Rule 8 and is well grounded in fact and law.

**Background**

{¶ 3} On April 18, 2017, appellant filed a complaint against appellees. Appellant amended the complaint, and it was filed on June 1, 2017.

{¶ 4} In the amended complaint, appellant asserts he was wrongfully terminated in violation of public policy. Appellant attached numerous documents to his complaint to help establish his case. On June 7, 2017, appellees moved to dismiss the amended complaint for failure to state a claim on which relief can be granted.

{¶ 5} On June 21, 2017, appellant responded opposing dismissal. Additionally, appellant moved the court for summary judgment on August 7, 2017.

{¶ 6} In the response and motion, appellant argued that his at-will employment was terminated in violation of public policy because appellees defamed him, broke an implied agreement, and did not follow village of Whitehouse's procedure when terminating him.

2.

**{¶ 7}** The trial court granted appellees' motion to dismiss on October 26, 2017, holding that appellant did not state a claim. The judgment was journalized on October 27, 2017, and appellant timely appeals.

## Standard of Review

**{¶ 8}** To dismiss a complaint under Civ.R. 12(B)(6), for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts entitling the party to recovery. *O'Brien v. University Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Appellate review of a Civ.R. 12(B)(6) motion is de novo. *Perrysburg Twp. v. Rossford*, 149 Ohio App.3d 645, 2002-Ohio-5498, 778 N.E.2d 619, ¶ 14 (6th Dist.).

**{¶ 9}** The court may not consider material outside the complaint and must view all reasonable inferences in favor of the non-movant. *Pulizzi v. City of Sandusky*, 6th Dist. Erie No. E-03-002, 2003-Ohio-5853, ¶ 6. The court must also view the factual allegations pled as true, and if any facts set forth a viable claim it is improper to dismiss the complaint. *Caston v. Bailey*, 6th Dist. Erie No. E-03-008, 2003-Ohio-4727, ¶ 5.

## Law and Analysis

**{¶ 10}** In his assigned error, appellant argues his complaint stated sufficient allegations to warrant denial of appellees' motion to dismiss because appellees allegedly terminated his employment in violation of public policy. Appellees contend appellant was lawfully terminated as an at-will employee and that he failed to state a claim.

3.

**{¶ 11}** In Ohio, employment relationships are governed by the common-law doctrine of employment-at-will. *See Beckloff v. Amcor Rigid Plastics USA, LLC*, 2017-Ohio-4467, 93 N.E.3d 329, ¶ 35 (6th Dist.), citing *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 11.

**{¶ 12}** The termination of an at-will employee usually does not give rise to an action for damages. (Citations omitted.) *Dohme*. However, if an employee is discharged "in contravention of the Ohio or U.S. Constitution, federal or state statutes, administrative rules and regulations, or Ohio common law, 'a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule.'" *Id.*, citing *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraph three of the syllabus; *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph one of the syllabus.

**{¶ 13}** To prevail on a claim of wrongful discharge in violation of public policy, a party must show:

> 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

4.

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*See Beckloff* at ¶ 36.

{¶ 14} "The first and second elements are issues of law to be determined by the court; the third and fourth elements are questions of fact to be determined by the fact-finder." *Id.*, citing *Dohme* at ¶ 17.

{¶ 15} Here, appellant argues his June 1, 2017 amended complaint states facts which support appellees acted contrary to public policy relating to defamation, breach of contract, and breach of village of Whitehouse articles of governance. We will address each argument in turn.

**Defamation**

{¶ 16} "Defamation, which includes both libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business." *Tackett v. Dept. of Rehab. & Corr.,* Ct. of Cl. No. 2006-06604, 2008-Ohio-3410, ¶ 19, citing *Sweitzer v. Outlet Communications, Inc.*, 133 Ohio App.3d 102, 726 N.E.2d 1084 (10th Dist.1999). "The essential elements of a defamation action are that a false statement was made, that the false statement was defamatory, that the false defamatory statement was published, that plaintiff was injured and that defendant acted

5.

with the required degree of fault." *Id.*, citing *Celebrezze v. Dayton Newspapers, Inc.*, 41 Ohio App.3d 343, 535 N.E.2d 755 (8th Dist.1988).

{¶ 17} In this case, appellant argues his amended complaint states facts from which relief could be sought for defamation, pointing to the following paragraphs:

9. On January 20, 2017, Plaintiff received a written notice of suspension from duty, without pay, pending an investigation. (See Plaintiff's Exhibit four (4). The alleged violations the Defendants accused Plaintiff of doing occurred between January 11-18, 2017.

10. The Defendants provided a written summary and recommendation report concerning the alleged violations of Plaintiff with references dating to Plaintiff's alleged behavior from January 11-13, 2017. (See Plaintiff's Exhibit five (5).

11. To support Defendants' written summary and recommendation report, Defendants attached an undated copy of statement purportedly signed by Amanda M. Crosby, another police officer for the defendant. (See Plaintiff's Exhibit six (6)[.] This statement is libelously false and was prepared for the sole intention to justify falsely a "reason" to terminate Plaintiff's employment with the Defendants. * * *

25. The statements made by the Defendants, jointly and severally, regarding Plaintiff that ultimately led to Plaintiff's job termination with the Village of Whitehouse, were defamatory.

6.

26. Defendant's statements regarding Plaintiff injured Plaintiff's reputation, exposed him to public contempt, ridicule, shame and disgrace that adversely affected Plaintiff's business and profession. * * *

27. Defendants' statements regarding Plaintiff were (a) factually false, (b) defamatory, (c) published, (d) resulting in Plaintiff suffering injury as a proximate result of the publication and (e) the Defendants acted with the requisite degree of fault in publishing the statements. * * *

28. Considering the totality of the circumstances in which Defendants made these defamatory statements and the context in which Defendants made these statements, it would be reasonable for the readers of these statements to conclude these statements against Plaintiff are defamatory. * * *

{¶ 18} As indicated in paragraph 11 of the amended complaint, "Exhibit 6" is the statement/report on which appellant heavily relies to establish his cause of action for defamation. We note that we will consider the documents attached to the amended complaint in evaluating the face of the complaint. *See*, *e.g.*, *Adlaka v. Giannini*, 7th Dist. Mahoning No. 05MA105, 2006-Ohio-4611, ¶ 34 ("If the plaintiff decides to attach documents to his complaint, which he claims establish his case, such documents can be used to his detriment to dismiss the case if they along with the complaint itself establish a failure to state a claim."). This exhibit No. 6 specifically states as follows:

7.

On January 13, 2017 I came in for shift at approximately 0545, Kyle McClanahan and Josh Malone were also there at 0600 for shift change. At 0607, Rich Feltner had not arrived for shift change yet, and I asked Malone to send a text to him asking where he was. No response was received and so at 0615 I asked Malone what GPS location Feltner was last showing to be at, and he said the AW Professional building. I drove to the AW Professional building and did not see 906 nor did I see Feltner. I then checked the cemetery, and still did not find Feltner. I asked Malone where else Feltner sits at, and he suggested that I check Pamela Rose as well as the old Dollar General. I checked Shell, as well as the real estate office, and did not find 906. I then checked old Dollar General, and still did not find him. As I turned north on Providence from Toledo, and saw 906 heading south on Providence. (*Sic*). I then followed 906 to the station.

When Feltner got out of his car, I asked where he was. He said he was driving around and on the phone. Feltner asked if we tried him on the radio, and I told him that we had sent him a text. He said something about only being ten minutes late, and I said that it was 6:30. He said he sees that now. He unloaded his vehicle, and left.

Amanda M. Crosby, # 11

{¶ 19} "The word 'false' has two meanings." *State v. Bowers*, 8 Ohio Dec. 324, 325 (C.P.1898). "Primarily it means that which is not true." *Id*. "Derivatively it means

8.

that which is stated to be true, intending to state it as a truth, which is not true, or of the truth of which the party stating it has not probable ground." *Id*.

{¶ 20} Here, we cannot say the amended complaint states facts that show or provide inference Officer Crosby's statement was false.

{¶ 21} The statement referenced in and attached to appellant's amended complaint as "Exhibit 5," to the contrary, reveals facts that indicate any defamatory statement made by Crosby was indeed true. More specifically, exhibit No. 5 is the disciplinary action "summary and recommendations" prepared by Deputy Chief Todd Kitzler. It confirms, by reporting what appellant said, that appellant was 30 minutes late for shift change, that he fell asleep during his shift and while being parked at "Industrial Park," and that he lied about being on the phone during that time.

{¶ 22} Consequently, and based on our de novo review, we find appellant stated no facts in the amended complaint from which we can infer Crosby falsely defamed him. Accordingly, we affirm disposition of appellant's claim for defamation.

### Breach of Contract

{¶ 23} Generally, a breach of contract occurs when (1) "a party demonstrates the existence of a binding contract or agreement"; (2) "the non-breaching party performed its contractual obligations"; (3) "the other party failed to fulfill its contractual obligations without legal excuse"; and (4) "the non-breaching party suffered damages as a result of the breach." *Ngo v. Paramount Care, Inc.*, 6th Dist. Lucas No. L-05-1359, 2006-Ohio-3874, ¶ 11.

9.

**{¶ 24}** Here, appellant argues there was an implied employment agreement, and that appellees breached the agreement by failing to follow the stated procedure by which an employee was to be terminated. Specifically, he points to appellees' policy manual.

**{¶ 25}** Appellees respond arguing this court should not consider the cause of action for breach of contract because the theory was not stated in the amended complaint. Further, appellees reiterate that appellant was an at-will employee subject to being terminated with or without cause, and that the policy manual does not provide otherwise.

**{¶ 26}** We initially look to Civ.R. 8(A), which in pertinent part identifies the "[g]eneral rules of pleading" as follows:

> **(A) Claims for relief.** A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled. * * *

*See*, *e.g.*, *B&J Jacobs Co. v. Ohio Air, Inc.*, 1st Dist. Hamilton No. C-020264, 2003-Ohio-4835, ¶ 11 (exploring how if facts show the required elements, Civ.R. 8(A) is satisfied for purposes of establishing a contract despite whether an implied or express theory applies).

**{¶ 27}** To show the existence of a binding contract, a party's complaint must show "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of

10.

consideration." *See Ridge Stone Builders & Developers, Ltd. v. Gribbin*, 6th Dist. Wood No. WD-03-009, 2003-Ohio-5188, ¶ 24, citing *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

{¶ 28} With respect to the employment agreement claimed here, appellant's amended complaint states as follows:

4.  On September 2, 2011, Defendant Village of Whitehouse (hereinafter Village), through Defendant Daughtery (hereinafter Daughtery) mailed a letter to Plaintiff offering him the position of Police Officer for the Village of Whitehouse.  (See copy of September 2, 2011 letter attached as Plaintiff's Exhibit one (1).  Plaintiff accepted this position and was required to pass a Village of Whitehouse physical examination, psychological examination, alcohol and drug tests as well as a background check.

5.  Plaintiff successfully passed these examinations and the background check and was hired by the Village of Whitehouse as a full time police officer.

6.  As part of the employment agreement among the parties, Plaintiff was provided a detailed personnel policy procedure handbook, that explained the rights and obligations of the parties, including all disciplinary procedures.  (See Plaintiff's Exhibit two (2)[.]

11.

7. As a result of the Defendants providing this detailed policy procedure handbook to Plaintiff, the employment "at-will" agreement among the parties was an implied contract among the parties. * * *

{¶ 29} Based on these stated facts and review of the attached documents, we cannot say appellant failed to show that an employment agreement existed. *See*, *e.g.*, *Armstrong v. Feldhaus*, 87 Ohio App. 75, 93 N.E.2d 776 (1st Dist.1950), paragraph two of the syllabus (stating "[A] plaintiff is required to plead only the facts constituting a cause of action. He is not required to plead any theory or classification of the cause of action set forth."). In viewing reasonable inferences favorably toward appellant, we find it is reasonable to infer that based on facts pled a contract existed in which appellant received compensation for being a police officer. Our determination is despite the legal theory not being expressly stated in the amended complaint. *Id.*

{¶ 30} Nevertheless, even accepting there was an employment agreement among the parties, we cannot say facts show appellees breached that agreement. This is because appellant was susceptible to being terminated as an at-will employee, and nothing stated in the amended complaint changes that status or the resulting outcome.

{¶ 31} The policy manual explicitly details appellant's at-will status. Attached as the fifth page of "Exhibit 2" is a document which is signed by appellant and which is entitled "Employee Agreement and Handbook Acknowledgement." It reads as follows:

This Personnel Policy Manual highlights the Village of Whitehouse's policies, procedures, and benefits. In all instances the

12.

official benefit plan texts, trust agreements and master contracts are the governing documents. Your Personnel Policy is not to be interpreted as a legal document or an employment contract. Employment with the Village of Whitehouse is at the sole discretion of the Village of Whitehouse and may be terminated with or without cause at any time and for any reason. Nothing in the Personnel Policy Manual constitutes as express or implied contract or assurance of continued employment or implies that just cause is required for termination.

{¶ 32} Consequently, our de novo review reveals appellant was subject to being terminated with or without cause. Nothing in the policy manual provides otherwise, and thus appellant fails to state a cause of action for breach of contract.

**Charter of the village of Whitehouse**

{¶ 33} Section 4.08(C), entitled "Executive Powers," of the charter of the village of Whitehouse, Ohio states as follows:

Except as otherwise provided by this Charter, the Mayor shall have the power to appoint, promote, transfer, suspend, reduce or remove any officer or employee of the Municipality except those required by this Charter to be elected or appointed; provided, however that such appointment, promotion, reduction or removal of officers provided for by this Charter and the heads of departments of divisions established pursuant

13.

thereto shall not take effect without the concurrence of a majority of the members of Council.

{¶ 34} Here, appellant asserts that an exception to the general rule governing termination of at-will employees exists where an at-will employee is terminated in contravention of a procedure set out in the charter of the village of Whitehouse.

{¶ 35} Nevertheless, we note that this procedure is not imposed by the Ohio or U.S. Constitution, federal or state statutes, administrative rules and regulations, or Ohio common law. *See Beckloff*, 2017-Ohio-4467, 93 N.E.3d 329, at ¶ 35. Further, appellant has not pointed to persuasive legal authority to support that such local law provides exception to the general rule that termination of an at-will employee does not give rise to an action for damages. *See*, *e.g.*, *Giannini-Baur v. Schwab Retirement Plan Servs.*, 9th Dist. Summit No. 25172, 2010-Ohio-6424, ¶ 28 (holding that the clarity element cannot be established by local law).

{¶ 36} Accordingly, appellant's arguments are not well-taken, and his sole assignment of error is denied.

## Conclusion

{¶ 37} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

14.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Mark L. Pietrykowski, J. | _____ |
| | JUDGE |
| Arlene Singer, J. | |
| | _____ |
| Thomas J. Osowik, J. | JUDGE |
| CONCUR. | |
| | _____ |
| | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.