OPINION
{¶ 1} Appellant, Nationwide Insurance ("Nationwide"), appeals the judgment of the Trumbull County Court of Common Pleas. The trial court granted a motion for summary judgment filed by appellee, Cosette A. Hough ("Cosette").
 {¶ 2} On May 6, 2000, Earl Hough ("Earl") was driving a pickup truck and hit Tina Marie Keeley and Christa Keeley, who were riding their bicycles, resulting in their deaths. The pickup truck was owned by Earl's ex-wife, Cosette. Cosette and Earl were divorced in 1987, however they continued to cohabitate through the date of the accident.
 {¶ 3} At the time of the accident, Earl did not have a valid driver's license. He had multiple driving under the influence of alcohol ("DUI") convictions, and according to Cosette, had not possessed a valid driver's license since the late eighties. Both Earl and Cosette stated that Earl was not precluded from reobtaining his driver's license and that he had not done so due to procrastination.
 {¶ 4} Gerald Keeley was named executor of Tina's (his daughter's) estate and was named administrator of Christa's (his granddaughter's) estate. In these capacities, as well as individually, he filed a complaint against Earl and Cosette. In addition, several insurance companies were named as defendants, including Nationwide. Nationwide provided insurance coverage to Gerald Keeley. Nationwide filed a cross-claim against Earl and Cosette.
 {¶ 5} Grange Mutual Casualty Company ("Grange") entered the action as an intervening plaintiff seeking a declaration of rights. Grange filed a motion for summary judgment arguing that Earl did not believe he had permission to use the pickup truck, therefore, he was not an insured, and plaintiffs were not entitled to coverage under the policy. The trial court granted Grange's motion for summary judgment.
 {¶ 6} Due to various settlement agreements, the plaintiffs' claims against all the remaining insurance companies were dismissed with prejudice. In addition, an agreed judgment entry was filed, prejudicially dismissing the plaintiffs' claims against Earl for $2,000,000 per estate.
 {¶ 7} Cosette filed a motion for summary judgment regarding Nationwide's cross-claim, arguing she did not negligently entrust her pickup truck to Earl. Nationwide filed a memorandum in opposition to Cosette's motion for summary judgment. The trial court granted Cosette's motion. Nationwide now appeals the trial court's award of summary judgment in favor of Cosette.
 {¶ 8} Nationwide raises the following assignment of error:
 {¶ 9} "The trial court erred when it granted summary judgment in favor of Cosette Hough because there was evidence which created a material fact issue of her negligent entrustment of her truck to her ex-husband whom she knew to be an incompetent driver."
 {¶ 10} The trial court's judgment entry merely states that Cosette's motion for summary judgment is granted. The trial court does not provide any reasoning for its judgment.
 {¶ 11} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the non-moving party.[2] The standard of review for the granting of a motion for summary judgment is de novo.[3]
 {¶ 12} In Dresher v. Burt, the Supreme Court of Ohio set forth a burden-shifting exercise to occur in a summary judgment determination. Initially, the moving party must point to evidentiary materials to show that there are no genuine issues of material fact and they are entitled to judgment as a matter of law.[4] If the moving party meets this burden, a reciprocal burden is placed on the non-moving party to show that there is a genuine issue of fact for trial.[5]
 {¶ 13} Regarding negligent entrustment, the Supreme Court of Ohio has held:
 {¶ 14} "The owner of a motor vehicle may be held liable for an injury to a third person upon the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent operator whose negligent operation results in the injury."[6]
 {¶ 15} "[U]nder negligent entrustment: `(The) liability of the owner is not based upon ownership or agency, but upon the combined negligence of the owner and driver; the owner in entrusting the vehicle to an incompetent driver, and the negligence of the driver in its operation.'"[7]
 {¶ 16} In the instant matter, there are, at a minimum, genuine issues of material fact regarding whether Earl negligently operated the pickup truck, resulting in the deaths of the victims. However, the remaining questions that need further analysis are: (1) did Cosette entrust the pickup to Earl? and (2) was Earl an incompetent operator?
 {¶ 17} Initially, we will address the issue of whether Cosette negligently entrusted her pickup truck to Earl.
 {¶ 18} At the time of the accident, Cosette owned two titled vehicles, a white Cadillac and a 1998 Dodge Ram pickup truck, which was involved in the accident. Earl stated he drove the Cadillac to work four or five times per month for the two years prior to May 2000. Later, he corrected himself, saying he drove the Cadillac four or five times per year. He stated Cosette did not know he drove the Cadillac. Cosette, however, stated she was aware that he drove the Cadillac and that she would get upset at him for taking it. She stated there were instances when she returned from work and the car would be moved, and he would tell her he went to the store.
 {¶ 19} Earl stated he had never driven the pickup truck on the road prior to the day in question. Cosette argues the fact that Earl never drove the pickup truck is conclusive evidence that she cannot be found to have negligently entrusted it to Earl. We disagree. The fact that Earl had driven the Cadillac demonstrates that she was aware he drove her vehicles.
 {¶ 20} In addition, in 1995, Earl also drove a different pickup truck, which was also owned by Cosette, and was involved in an accident. He received a DUI conviction as a result of this accident. He stated Cosette knew about this incident and she responded by telling him never to drive her vehicles.
 {¶ 21} Both Earl and Cosette stated Cosette had instructed Earl not to drive her vehicles. Thus, Cosette met her initial burden of showing there were no genuine issues of material fact. The remainder of this analysis will focus on whether Nationwide met its reciprocal burden of demonstrating a genuine issue of material fact remaining for trial.
 {¶ 22} Based upon the evidence in the record, there is no genuine issue of material fact regarding whether Cosette expressly granted Earl permission to operate her pickup truck. However, the permission element of negligent entrustment may be express or implied.[8] Implied permission has been defined as "`a sufferance of use or a passive permission deduced from a failure to object to a known past, present or intended future use where the use should be anticipated.'"[9]
 {¶ 23} The Eighth Appellate District affirmed a summary judgment award in favor of a car owner on a negligent entrustment claim.[10] InShapiro v. Barden, a son drove his mother's car when his driver's license was suspended. She instructed him not to drive due to his license suspension; however, he drove her car and was involved in an accident. The Eighth District held that the fact the mother had given the son permission to drive the car on previous occasions did not create a genuine issue of material fact or counter the evidence that she specifically instructed him not to drive her car.[11] The case at bar is distinguishable from Shapiro v. Barden, because Cossette was aware that Earl had driven her vehicles several times, despite her instructions not to do so.
 {¶ 24} There was evidence presented that Cosette knew Earl had driven her vehicles on several occasions, going back to 1995, when he was involved in an accident with one of her vehicles. Even though Cosette told Earl not to drive her vehicles, she knew he did so numerous times, including an incident that ended in a motor vehicle accident and a DUI conviction. While Cosette threatened Earl that she would call the police and report Earl for automobile theft, she apparently never did so. Based on the multiple known instances of Earl driving her vehicles, a reasonable person could conclude that Cosette merely "looked the other way" when she found out Earl was driving her vehicles. Such a finding could support a conclusion that Cosette gave Earl her implied permission to drive the vehicles.
 {¶ 25} Earl claimed he had a copy of Cosette's key to the truck made without her knowledge. He stated he kept this key in a toolbox in the garage. He stated he used his copied key to drive the pickup truck on the night in question. However, Cosette stated Earl drove the pickup truck on the day in question by using the "Hide-A-Key."
 {¶ 26} The following dialogue occurred during Cosette's deposition:
 {¶ 27} "Q. Have you learned how Mr. Hough got the pickup truck started?
 {¶ 28} "A. After the — after the accident, yes.
 {¶ 29} "Q. What did you learn?
 {¶ 30} "A. With a Hide-A-Key. He got the Hide-A-Key.
 {¶ 31} "Q. Where was the Hide-A-Key?
 {¶ 32} "A. Behind the license plate, underneath, you know, where the license plate is, back in there.
 {¶ 33} "Q. Did he know where that was?
 {¶ 34} "A. I did not think so, but evidently he did.
 {¶ 35} "Q. Do you keep a Hide-A-Key on both your Cadillac and the pickup truck?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. You had known him to drive the Cadillac in the past?
 {¶ 38} "A. Yes.
 {¶ 39} "Q. Had he used the Hide-A-Key to the Cadillac?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. And it was kept in the same location?
 {¶ 42} "A. But after the first time, I took it away, you know what I mean. The Cadillac then did not have a Hide-A-Key after I [knew] he took that.
 {¶ 43} "Q. But you left the Hide-A-Key on the pickup truck?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. Why?
 {¶ 46} "A. I didn't think to take it away."
 {¶ 47} There is competing evidence as to where Earl obtained a key to drive the pickup truck. However, for summary judgment purposes, the events must be viewed in totality and most strongly in favor of Nationwide, as the nonmoving party. Cosette became aware that Earl obtained access to her Cadillac by means of a "Hide-A-Key." Despite this knowledge, she left the Hide-A-Key for the pickup truck in a location where Earl could retrieve it.
 {¶ 48} Cosette knew Earl had a propensity to drive her vehicles in the face of her instructions not to do so. This course of events occurred for more than five years. In addition, knowing that Earl had used a Hide-A-Key to operate her Cadillac, Cosette left the Hide-A-Key for her pickup truck in a location that was accessible by Earl. Nationwide met its reciprocal burden demonstrating a genuine issue of material fact on the issue of whether Cosette entrusted her pickup truck to Earl.
 {¶ 49} Next, we will address the issue of whether Earl is an incompetent driver. Earl did not have a valid driver's license at the time of the accident. Cosette stated that he did not have a driver's license since the mid to late eighties. Earl stated he had three prior DUIs. Cosette indicated she thought he had four, all of them since the late eighties. Earl stated that one of his prior DUIs, in 1995, involved an accident. Finally, Cosette was aware of these factors and specifically excluded Earl from her insurance coverage.
 {¶ 50} There was evidence that Earl was an unlicensed driver, he had multiple DUI convictions, and had caused an accident as a result of one of his DUIs. Taken together, this evidence is sufficient to create a genuine issue of material fact as to whether Earl is an incompetent driver.
 {¶ 51} There are genuine issues of material fact regarding all of the elements of negligent entrustment. Therefore, the trial court erred in granting Cosette's motion for summary judgment.
 {¶ 52} Nationwide's assignment of error has merit.
 {¶ 53} The judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.
Rice, J., concurs,
O'Toole, J., concurs in judgment only.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Civ.R. 56(C).
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[4] Dresher v. Burt, 75 Ohio St.3d at 293.
[5] Id.
[6] Gulla v. Straus (1950), 154 Ohio St. 193, paragraph three of the syllabus.
[7] (Secondary citations omitted.) Egbert v. Bowden (Dec. 29, 1995), 11th Dist. No. 95-T-5209, 1995 Ohio App. LEXIS 5880, at *15, quotingMcCarty v. Lynn (1990), 67 Ohio App.3d 369, 375.
[8] Bish v. Pritchard (June 19, 1986), 2d Dist. No. 85AP-898, 1986 Ohio App. LEXIS 7270, at *5-6.
[9] Id., quoting Alston v. Hunsberger (Mar. 17, 1970), 2d Dist. No. 9514.
[10] Shapiro v. Barden (Dec. 13, 2001), 8th Dist. No. 79267, 2001 Ohio App. LEXIS 5535.
[11] Id. at *8-9.