[Cite as *Romstadt v. Garcia*, 2017-Ohio-7277.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Eric Romstadt

     Appellant

v.

Lionel Garcia, et al.

     Appellee

Court of Appeals No. L-16-1222

Trial Court No. CI0201502485

**DECISION AND JUDGMENT**

Decided: August 18, 2017

* * * * *

Kevin J. Boissoneault and Jonathan M. Ashton, for appellant.

Shawn R. Pearson and Lavell O. Payne, for appellee.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted defendant-appellee, Maria Duran, motion for summary judgment following plaintiff-appellant Eric Romstadt's voluntary dismissal of all claims against co-defendant Lionel Garcia. For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** On May 4, 2015, appellant Eric Romstadt filed a complaint with jury demand against co-defendants Lionel Garcia and Maria Duran setting forth claims of negligence and/or negligence per se against defendant Garcia and negligent entrustment against appellee Duran. Romstadt alleged he suffered personal injuries due to Garcia's negligent operation of Duran's vehicle on July 9, 2014, and due to Duran's negligent entrustment of Garcia with that vehicle that day. Garcia and Duran filed answers with various denials, affirmative defenses and jury demands. Both Duran and Garcia admitted Duran owned the vehicle involved in the July 9, 2014 accident. Following a period of discovery by the parties set forth in the trial court's scheduling orders, Duran filed a motion for summary judgment on Romstadt's claim of negligent entrustment, which Romstadt opposed. As journalized on July 13, 2016, the trial court granted Duran's motion.[1] Romstadt then voluntarily dismissed defendant Garcia without prejudice on September 23, 2016, which the trial court granted. Romstadt then filed this appeal.

**{¶ 3}** Romstadt sets forth one assignment of error:

I. The trial court erred when it granted summary judgment in favor of Appellee Maria Duran.

**{¶ 4}** Appellate review of trial court summary judgment determinations is de novo, employing the same Civ.R. 56 standard as trial courts. *Chalmers v. HCR*

---

[1] Romstadt's original appeal of the trial court's summary judgment decision was sua sponte dismissed by this court pursuant to Civ.R. 54(B). *See Romstadt v. Garcia*, 6th Dist. Lucas No. L-16-1176.

2.

*ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 21; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.

{¶ 5} Summary judgment may be granted only

if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * * [and] that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 6} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that affirmatively demonstrate the absence of a genuine issue of material fact—not the reliance on conclusory assertions that non-movant has no evidence to prove its case—regarding an essential element of the non-movant's case. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 6th Dist. Sandusky No. S-16-041, 2017-Ohio-4467, ¶ 14. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts

3.

showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E). *Id*. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Id*.

{¶ 7} The following undisputed facts are relevant to the issues raised on appeal. On July 9, 2014, an accident occurred when the motorcycle driven by Romstadt collided with the van driven by Duran's adult son, Lionel Garcia, on Dorr Street in Toledo, Ohio. Romstadt received medical treatment following the collision. Duran owned the van driven by Garcia. Also at the time of the accident, Garcia lived with Duran and Garcia lacked a driver's license because of failing to pay child support. Duran did not conceal the keys to her vehicles from Garcia prior to the date of the accident. Garcia did not request permission from Duran prior to taking the van the morning of the accident. Duran was not in the van with Garcia when the accident occurred because she was home getting ready for a medical appointment.

{¶ 8} Romstadt's claim of negligent entrustment by Duran was the subject of the trial court's summary judgment determination. In an action for liability against the owner of a motor vehicle for injury arising from its alleged negligent entrustment, there is a three-part test. Romstadt must establish that: (1) the motor vehicle was driven by Garcia with the permission and authority of the owner, Duran; (2) the entrusted driver, Garcia, was in fact an incompetent driver, and (3) that the owner, Duran, either knew or should have known such facts as would imply at the time of entrustment that the entrusted driver, Garcia, had no driver's license or was incompetent or unqualified to operate the

4.

vehicle. *Nationwide Mut. Ins. Co. v. Cano*, 6th Dist. Erie No. E-07-014, 2007-Ohio-5354, ¶ 15; *Gulla v. Straus*, 154 Ohio St. 193, 195, 93 N.E.2d 662 (1950), paragraphs three and five of the syllabus.

{¶ 9} The sole matter on appeal is whether Romstadt can withstand summary judgment review past the first element of negligent entrustment: whether the motor vehicle driven by Garcia on July 9, 2014, was with the permission and authority of the owner, Duran. To establish the first element, Romstadt argues he presented ample evidence of Duran's implied permission to Garcia to operate the van on the date of the accident because Garcia is Duran's adult son and has lived with her for many years, Garcia had easy access to Duran's keys to the van, Duran kept the van titled and insured even though she would not drive it, and Garcia had a propensity to drive without a license about which Duran must have known when living together in the same home.

{¶ 10} Supporting summary judgment Duran offers evidence rebutting Romstadt's claim of negligent entrustment. Specifically, Duran denies ever giving Garcia permission, express or implied, to drive her vehicles while his driver's license was suspended. Garcia, in turn, specifically affirms he knew Duran did not give him permission to drive her vehicles while his driver's license was suspended, and on the day of the accident he did not seek her permission before taking the van involved in the accident. He spontaneously decided to take the van because his girlfriend needed a ride to work or else she would be fired.

5.

{¶ 11} In opposing summary judgment Romstadt offers evidence elicited from the depositions of Duran and Garcia to show there are genuine issues of material fact that should be decided at a trial. Romstadt admits he lacks any personal knowledge of the following evidence. At the time of the accident on July 9, 2014, Garcia lived with his mother, Duran. Duran had only one set of keys to the van, and those keys were visibly kept on a hook on the kitchen counter that Garcia could easily take. Duran kept two vehicles (car and van) titled and insured, but she exclusively drove only the car and not the van because the van was "too tall" for her. Duran knew that Garcia was an unlicensed and uninsured driver on July 9, 2014. In spite of Garcia's prior incidents of driving on a suspended license in 2006 and 2009 citations, when Garcia lived with Duran, Duran knew or should have known Garcia had a propensity to drive without a license and did not hide the vehicle keys from him. Duran was home at the time Garcia took the van keys from the kitchen counter hook. Duran also failed to notify the police upon discovering Garcia had taken her van. Moreover, Duran's credibility during her deposition testimony is suspect because it was inconsistent, self-serving and biased due to her interest in the outcome of the litigation.

{¶ 12} To rebut Romstadt, Duran and Garcia testified in their respective depositions they are mother and son, and Garcia lived with Duran somewhere between 15 and 30 years prior to the accident. For the past five years while Garcia lived with Duran, she had an illness for which she was regularly being treated at a clinic. When Duran felt well, she would drive herself in her car to and from the clinic. When she did not feel

6.

well, she asked friends and family for transportation to the clinic. She would only ask Garcia to drive her to the clinic after his license was reinstated and he had insurance.

{¶ 13} Garcia did not have a driver's license or insurance on the date of the accident and for a period of either four months or four years leading up to the accident. His license was suspended because he owed child support. While his license was suspended Garcia's means of transportation was to walk, ride his bike, or to ask for a ride from someone, including his mother, Duran. While his license was suspended, Garcia did not drive any vehicles. Duran owned and insured a Dodge Avenger car and van (sometimes also called "the truck"), but she had not driven the van for about three months prior to the accident because it was "too tall" for her. While Garcia was without a license and living with her, Duran explicitly instructed Garcia not to drive either of her vehicles, including the van, and until the date of the accident, Garcia obeyed her instruction. At some point after the accident Garcia began paying child support and his driver's license was reinstated and he obtained insurance. While Garcia had a license and was living with her, Duran required Garcia to ask permission before taking any vehicle so that she knew where he was with her vehicle. Duran had only one set of keys to the van, and those keys were kept on a hook on the kitchen counter of her home. The security of the keys had never been a problem with Garcia prior to July 9, 2014, and Duran had no reason to conceal them from Garcia on the date of the accident. After the accident and while Garcia did not have a license, Duran began concealing the keys to the vehicles in her bedroom dresser drawer.

7.

**{¶ 14}** The following explanation was provided by Garcia for why on July 9, 2014, he disobeyed Duran's explicit prohibition he could not drive her vehicles while he was without a license. Both Duran and Garcia testified July 9, 2014, was the first and only time Garcia disobeyed Duran's instruction. On the morning of the accident, Garcia's then-girlfriend called him in need of a ride to work as a waitress at IHOP in Toledo otherwise she would be fired. Garcia's girlfriend did not own a car and on the morning of July 9, 2014, her brother could not give her a ride to work, so she called Garcia. Without asking Duran's permission, Garcia spontaneously grabbed the only set of keys he found on the kitchen counter hook: the van's keys. En route to picking up his girlfriend in the van to take her to work, the collision with Romstadt occurred.

**{¶ 15}** The precise details of what led to the collision of Romstadt's motorcycle with Duran's van driven by Garcia, and how the collision occurred, are in dispute between Romstadt and Garcia. Romstadt received the citation from the police for the collision. However, it is undisputed Romstadt voluntarily dismissed his negligence claims against Garcia.

**{¶ 16}** In viewing the record evidence most favorably for Romstadt, Garcia's access to the van keys—access that he had during the entire time he lived with Duran up to the date of the accident—is not, alone, sufficient to support an inference that Duran entrusted Garcia with the van on July 9, 2014, which Garcia then allegedly operated negligently. *Shapiro v. Barden*, 8th Dist. Cuyahoga No. 79267, 2001 Ohio App. LEXIS 5535, *9 (Dec. 13, 2001); *Fletcher Trucking v. Columbus Fair Auto Auction*, 10th Dist.

8.

Franklin No. 94APE09-1394, 1995 Ohio App. LEXIS 2458, *22 (June 13, 1995).

Because Duran and Garcia both deny Garcia had Duran's permission to use the van on July 9, 2014, and affirm Garcia had never before taken Duran's vehicles while he was without a driver's license, Romstadt must provide other evidence of Garcia's implied permission. "Even though [implied permission] can be proven circumstantially, permission must be actual. When that actuality is denied by both the grantor and the purported grantee, its existence cannot be inferred from extrinsic evidence that neither contradicts their testimony nor disturbs their credibility." *Continental Ins. Co. v. Whittington*, 2d Dist. Darke No. CA1295, 1993 Ohio App. LEXIS 621, *29-30 (Feb. 4, 1993). In his deposition Romstadt admitted he had no personal knowledge of how Garcia came to get possession of the van he drove on the day of the accident, how Garcia came to not have a valid driver's license on that day, or Garcia's past driving record other than what he read in the police report or what his attorney told him.

{¶ 17} Romstadt's additional evidence of Garcia's implied permission is to argue that the trial court impermissibly favorably weighed Duran's credibility because Duran contradicts her own testimony on whether or not Garcia had to receive permission before taking the car, as well as other inconsistencies.

{¶ 18} Romstadt points to one inconsistency in Duran's testimony when she answered in the affirmative in response to a question about Garcia's ability to take the keys and the cars any time he wanted, but then later contradicted her statement. Romstadt urges us to view this affirmative statement as evidence of Duran's express

9.

permission to Garcia to take her car on the date of the accident. However, a review of the complete record shows that this moment of inconsistency came about when she did not understand the question and, after receiving clarification, she affirmed she did not give Garcia permission to drive her cars while he had no driver's license. Duran testified in her deposition in pertinent part:

Q: And where did you keep the keys for the van?

A: On the counter in the kitchen.

Q: Was it hooked on something?

A: Yes.

Q: So obviously Lionel could take the keys and take the cars anytime he wanted?

* * *

A: Yes.

Q: And he would take the cars from time to time?

A: Like what do you mean, sir?

Q: He would drive the cars from time to time?

A: No.

Q: Never drove the cars?

A: No.

Q: Never?

A: No, the first time he took it. It was a surprise for me he took [sic] that truck.

Q: Did you make out a police report that he took the vehicle without your permission?

A: No.

{¶ 19} A review of Garcia's deposition testimony confirms Duran's testimony in rebuttal to the inconsistency alleged by Romstadt:

Q: When was the last time before July 9, 2014, that you drove either the van or the Avenger?

A: When was the last time?

Q: Yes.

A: That was the first time.

Q: That was the first time you've ever driven the van or Avenger?

A: Without asking my mom, I never asked. I always ride my bike.

* * *

Q: Nonetheless, prior to the morning of July 9, 2014, when was the last time in your best estimate that you drove the van?

A: That was the first and last the day of the accident.

Q: You had never driven the van before that morning ever?

A: No.

11.

{¶ 20} Romstadt points to another inconsistency in Duran's testimony when she answered in the affirmative in response to a question about Garcia's ability to ask permission before taking the cars, even while he was without a driver's license. Romstadt also argues that Duran's implied permission to Garcia on July 9, 2014, can be concluded from her presence at home at the time Garcia left with the van. Again, a review of the complete record shows that this moment of inconsistency came about during a misunderstanding of the question and, after additional questioning, she was able to affirm, once again, she did not give Garcia permission to drive her cars without a driver's license. Duran was surprised when she learned Garcia took her van. She was not aware Garcia left with the van when she was getting ready to go to the clinic:

> Q: Were you regularly driving the car as of July of 2014?
>
> A: Yes.
>
> Q: You drove the car?
>
> A: Yes, because I was going to my clinic, and I was getting ready, my door was shut, my door it was closed, and I was getting ready to go to the clinic. Then [Lionel] called me on the phone, said he had an accident, and I was mad. Why you took [sic] my truck, you didn't ask me, that's what I said.
>
> Q: He's supposed to ask you before he takes it?
>
> A: Yes, he's supposed to ask me. Why he didn't, he just took [sic] it.

Q: Has he asked you before?

A: No.

Q: Then why was he supposed to ask you?

* * *

A: Because sometime [sic] I want to know where he is, where he is with my cars, that's why.

Q: So sometimes he takes the cars, but he asks your permission first; is that correct?

A: Yes.

Q: As long as he asks you, you'll give him permission to take the vehicles?

A: No. When he didn't have no [sic] license, I don't [sic] let him drive. No, no.

Q: And he hadn't had a license for four years?

A: Now, he got his license. Yeah, four years. No, I don't let him drive my truck.

Q: So what about the car?

A: Neither.

Q: So for four years prior to this incident, Lionel didn't drive either the van or the car?

A: No. He want [sic] to go someplace, I take him.

{¶ 21} And later during her deposition, Duran affirmed that she only gave Garcia permission to drive her cars once he had his driver's license again:

Q: The other 50 or 60 times, who has taken you [to the clinic]?

A: Like right now [Lionel] got his license and he got insurance, and now I ask him to take me.

* * *

Q: So if Helen has taken you about three times to the clinic, and Alice has taken you about four times to the clinic, who has taken you the other 140 times?

A: I drive my car.

Q: You drive yourself?

A: Yes, I drive myself. I feel good and I drive myself.

Q: Isn't it true that Lionel used to drive you to the clinic even without a license?

A: No, sir.

Q: Never drove you --

A: No.

Q: -- to the clinic without a license?

A: No, sir.

14.

**{¶ 22}** A review of Garcia's deposition testimony confirms, once again, Duran's testimony in rebuttal to the inconsistency alleged by Romstadt:

Q: As of July 9, 2014, how long had you been without a valid driver's license?

A: About maybe three or four months I believe.

Q: Why were they [sic] taken away three or four months earlier?

A: Child support.

Q: Nothing else, just child support?

A: No, I believe just child support.

* * *

Q: And at the time of this incident you were driving the van; is that correct?

A: I took the van without asking. Yes, I did.

Q: At the time of this incident, you were driving the van?

A: At the accident, yes. I mean, I took the van and then I had the accident.

Q: So at the time of this accident, you were driving the van, correct?

A: I only drove it at that accident that day, and that was it.

Q: You drive the van?

A: Yeah, but I do have a driver's license and I do have insurance.

15.

* * *

Q: How did you get your driver's license back?

A: How did I get my driver's license back?

Q: Right.

A: Because I started paying child support back.

{¶ 23} Romstadt points to other inconsistencies between Duran and Garcia as to exactly how long Garcia lived with Duran and how long Garcia was without a license. Duran testified Garcia lived with her for 30 years, while Garcia testified he lived with her for 15-16 years. Duran testified Garcia was without a driver's license for four years before the day of the accident, while Garcia testified it was three to four months. These inconsistencies do not arise to the level to cast doubt on the credibility of their deposition testimony so as to preclude a determination by summary judgment. *Inspiron Corp. v. Tri-State Med. Supply*, 6th Dist. Fulton Nos. F-86-4 and F-86-6, 1986 Ohio App. LEXIS 7543, *9 (July 11, 1986). Obviously these are inconsistent statements between co-defendants, but the mere presence of inconsistent statements does not necessarily make summary judgment inappropriate because the facts in dispute must be both genuine and material as required by Civ.R. 56. "Irrelevant and unnecessary factual disputes will not preclude summary judgment." *Wall v. Firelands Radiology*, 106 Ohio App.3d 313, 322, 666 N.E.2d 235 (6th Dist.1995). The inconsistent statements between Garcia and Duran as to exactly how long Garcia lived with Duran and how long Garcia was without a license do not bear directly on Romstadt's key arguments for implied permission to

16.

establish the first element of negligent entrustment. Those inconsistent statements are not material facts that affect the outcome of this litigation because they do not raise genuine issues to rebut Duran's testimony she specifically did not allow Garcia to drive her vehicles while Garcia did not have a driver's license, Garcia had not violated her instructions prior to July 9, 2014, and on the day of the accident, Garcia spontaneously took the van keys (the only ones on the hook) without seeking Duran's permission to pick up his girlfriend and drive her to work.

{¶ 24} Romstadt also challenges Duran's credibility by arguing that Duran's deposition testimony was self-serving and biased because of her interest in the outcome of the litigation. Specifically, Romstadt argues, pursuant to *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 164, 499 N.E.2d 1291 (10th Dist.1985), paragraph two of syllabus, that in order for the trial court to determine summary judgment in Duran's favor, the trial court had to "manifestly turn" on the credibility of Duran's testimony. Romstadt further argues that since Duran was obviously biased and interested in the proceedings, summary judgment was improper and the credibility of her testimony should have gone to trial where Duran's demeanor could be observed. Despite Romstadt's assertion, neither the trial court's summary judgment determination, nor our review of the record de novo, "manifestly turn" on the credibility of Duran's testimony. Rather, summary judgment in this case was determined using the well-established standards under Civ.R. 56. *Dresher v. Burt*, 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264 (1996).

17.

**{¶ 25}** Undoubtedly Duran's testimony was self-serving because she denied liability in response to Romstadt's claim of negligent entrustment. However, self-serving testimony is not, itself, impermissible for summary judgment purposes. *See* Civ.R. 56(C). Rather, this court has held that self-serving testimony which baldly contradicts the evidence offered by the moving party is insufficient to create a genuine issue of fact. *Bates Recycling, Inc. v. Village of Cygnet Fire Dept.*, 2012-Ohio-4185, 976 N.E.2d 962, ¶ 20 (6th Dist.). Here, the roles are switched, and Romstadt, as the non-moving party, argues that the self-serving testimony by Duran, the moving party, is attempting to *not* create a genuine issue of fact. However, that is exactly the moving party's burden for summary judgment: to specifically show where in the record "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). The non-moving party's burden is similarly clear: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Merely labeling Duran's testimony as self-serving or otherwise not credible due to bias does not satisfy Romstadt's burden in opposing summary judgment.

**{¶ 26}** Romstadt offers no other evidence of implied permission to challenge the credibility of Duran and to support a reasonable belief of how Duran's permission to Garcia to operate the van on July 9, 2014, was manifested. Even implied permission

18.

must be actual, though rather than evidence of specific words and acts employed by the grantor, implied permission is proven circumstantially. *Continental Ins. Co. v. Whittington*, 2d Dist. Darke No. CA1295, 1993 Ohio App. LEXIS 621, *27 (Feb. 4, 1993); *Carbone vs. Ina Ins. Co.*, 8th Dist. Cuyahoga Nos. 42622 and 42772, 1981 Ohio App. LEXIS 13996, *7 (Mar. 19, 1981). In this case where both the grantor and grantee of the alleged permission both deny such permission, the other circumstances cited by Romstadt do not support a reasonable belief that Garcia had Duran's permission to drive her van on July 9, 2014. Even when accepting Romstadt's definition of implied permission as "a sufferance of use or a passive permission deduced from a failure to object to a known past, present or intended future use where the use should be anticipated," *Keeley v. Hough*, 11th Dist. Trumbull No. 2004-T-0038, 2005-Ohio-3771, ¶ 22, Romstadt failed to show how Duran could have foreseen or anticipated Garcia's actions on July 9, 2014, when both she and Garcia testified it was the first and only time Garcia disobeyed her explicit instruction.

{¶ 27} The record at the time of the motion for summary judgment supports no rational connection between Garcia's use of Duran's car on July 9, 2014, and his 2006 and 2009 incidents of driving without a license that purportedly show his propensity to drive without a license, that Duran knew or should have known would occur on July 9, 2014, and result in injuries to another motorist. Romstadt provides no evidence those prior incidents by Garcia of driving without a license involved Duran's vehicles, or that Garcia relied on those past incidents of using Duran's vehicles without a driver's license

19.

to conclude that he had Duran's permission to take the van on the date of the accident. Moreover, Duran specifically denied she ever gave Garcia permission to drive her vehicles while he was without a driver's license, and Garcia testified the first, and only, time he disobeyed her explicit instruction was on the day of the accident. Duran testified she was surprised to learn Garcia took her van on July 9, 2014, because he did not have his driver's license at that time and he had never before driven her cars when he was without a license. Romstadt does not provide evidence of foreseeability. The record does not reflect any request by Garcia's girlfriend for a ride to work prior to July 9, 2014, nor of any prior event where Garcia took—for any reason—either of Duran's vehicles when he did not have a license, nor of any prior events when Garcia collided any of Duran's vehicles with others.

{¶ 28} Romstadt supplied evidence of the existence of criminal traffic cases from 2006 and 2009 of incidents of Garcia driving without a license, though neither resulted in convictions. That evidence does not per se establish that Garcia was negligent in the past nor that it would be foreseeable to Duran that he would be negligent in the future, including on July 9, 2014. Moreover, the fact of Garcia's driving Duran's van without a license on July 9, 2014, does not, itself, show the lack of a driver's license was the proximate cause of Romstadt's injuries. *Gulla, supra*, at 195, paragraph two of the syllabus; *see Hartough v. Brint*, 101 Ohio App. 350, 352, 140 N.E.2d 34 (6th Dist.1955).

{¶ 29} Garcia testified he was without a license on July 9, 2014, because he failed to pay child support, and Romstadt did not rebut that reason. Instead Romstadt urges this

20.

court to determine that the lack of a driver's license means Garcia was an incompetent driver, and Duran knew or should have known Garcia was incompetent on July 9, 2014. However, the lack of a driver's license is not a per se reason to conclude a driver is incompetent, although the lack of a license may be evidence of incompetence. *Community Mut. Ins. Co. v. Kaczmarski*, 6th Dist. Lucas No. L-97-1220, 1998 Ohio App. LEXIS 1830, *11 (May 1, 1998). Garcia's incompetence on July 9, 2014, was not an issue reached by the trial court.

{¶ 30} Romstadt also argues that implied permission can also be gleaned from the fact that Duran did not make out a police report when she learned that Garcia took the van without her permission. *Stearns v. Elam*, 8th Dist. Cuyahoga No. 85925, 2005-Ohio-4995, ¶ 10. In order to determine whether the specific issue of reporting the missing van to the police is a genuine issue of material fact, the record shows that while Duran was in her room getting ready to take herself to her medical appointment, she first learned that Garcia took her van and got in an accident when Garcia called her to tell her he had gotten into an accident. She was mad at him for taking her car and not letting her know he needed to go somewhere, which is what he always had done before. In the past when he was without a driver's license and needed to go somewhere, he asked and she drove him. These facts are entirely distinguishable from those in *Stearns*. Even if a jury did not reasonably believe Duran's testimony, the specific issue of Duran reporting the missing van to the police does not amount to a genuine issue of material fact affecting the outcome of Romstadt's claim against Duran for negligent entrustment.

21.

**{¶ 31}** The record contains no evidence to satisfy the first element of negligent entrustment on permission. Since we cannot conclude that a jury could find the record contains genuine issues of material facts from which to determine at trial Garcia obtained implied permission from Duran, whether or not Romstadt can establish the other elements of negligent entrustment becomes unnecessary to review. Therefore, we decline to address the remaining two elements given Romstadt's failure to meet the initial evidentiary prong. Romstadt failed to establish a prima facie case of negligent entrustment against Duran. Appellant's sole assignment of error is found not well-taken.

**{¶ 32}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____
JUDGE

Thomas J. Osowik, J.

_____
Christine E. Mayle, J.                    JUDGE
CONCUR.

_____
JUDGE

22.