[Cite as *Sandelin v. Sosbe*, 2023-Ohio-2091.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Danielle Sandelin et al., individually
and as parent and natural guardian
of A.S., a minor, and Danielle Sandelin,
individually and as parent and natural
guardian of S.S., a minor.

Appellant

v.

Jackie Sosbe, et al.

Appellee

Court of Appeals No.  L-22-1193

Trial Court No.  CI0202101850


**DECISION AND JUDGMENT**

Decided:  June 23, 2023

* * * * *

Lorri J. Britsch, for appellant.

Joseph G. Ritzler and Robin Christine Kunikis, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Danielle Sandelin, individually and as guardian of her minor children, A.S. and S.S., appeals the July 25, 2022 decision of the Lucas County Court of Common Pleas granting summary judgment in favor of appellee, Jackie Sosbe, and dismissing Sandelin's claims against Sosbe.  For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} On May 1, 2019, Sandelin was involved in a car accident with a pickup truck. The driver of the truck turned left in front of Sandelin, striking her van. The driver fled the scene of the accident, leaving the truck he was driving behind. Sandelin testified at her deposition that the driver was male, but she could not recall any other details about him. As a result of the accident, Sandelin sustained a concussion and injuries to her neck and back; the children each sustained minor injuries. Sandelin's injuries continue to cause her pain and have affected the quality of her life.

{¶ 3} At her deposition, Sosbe testified that the truck involved in the accident belonged to her. The truck was one of two vehicles that she owned, and she did not drive it often. She kept the truck's keys (and other assorted household items) on a table in her living room.

{¶ 4} At the time of the accident, Sosbe lived with Jason Brilla. Sosbe said that she and Brilla had been dating for approximately five and one-half years, and had lived together "[o]n and off for five years." He was the only other person who could have taken the truck keys from Sosbe's home. Their relationship ended shortly after the accident because, according to Sosbe, Brilla was "stealing * * * [m]oney out of [her] purse and selling [her] possessions." Brilla did not return to Sosbe's home after the accident and moved out within a couple of weeks. Although Brilla occasionally tried to contact Sosbe after he moved out, she did not respond to his messages and did not know where he was living.

2.

**{¶ 5}** Sosbe testified that she was at home and asleep at the time of the accident. She learned of the accident when Brilla called and told her that "[h]e was in an accident and he left the scene." After telling her that, Brilla hung up the phone and did not answer when Sosbe called him back. She did not recall talking to the police, and was unaware of what, exactly, happened to the truck; she "was told it was in the police impound" lot, but she did not attempt to retrieve the truck because she believed that it was "not driveable" and she "didn't have the money to go get it out."

**{¶ 6}** Sosbe knew that Brilla did not have a valid driver's license on May 1, 2019; she said that he did not have one the entire time they dated. As far as she knew, his license was suspended because "he owed too much to get it" due to "court costs for other incidents." Brilla had not driven either of Sosbe's vehicles before the accident, although he had asked her if he could drive them. Sosbe testified that she told him "[n]o" when he asked "[b]ecause he didn't have a license." And, as far as Sosbe knew, Brilla had not taken the keys to her vehicles before May 1, 2019. Additionally, Sosbe testified that, "[t]wo years into [their] relationship[,]" she specifically told Brilla that "he wasn't allowed to drive [her] vehicles if he didn't have a license and [she] wasn't going to be in trouble for any of his mistakes." Sosbe did not file a police report regarding Brilla taking her truck. Her reasons for not reporting him were that she "just wanted [Brilla] out of [her] life for good" and she "just didn't. No reason."

**{¶ 7}** As exhibits to her response to Sosbe's motion for summary judgment, Sandelin submitted five documents from the Toledo Municipal Court. The first is the

3.

docket sheet from a 2018 OVI case that lists Brilla as the defendant and includes entries showing that Brilla pleaded no contest and was found guilty (although the docket does not specify the charge that Brilla pleaded to). The second document is the docket sheet from a 2014 traffic case that lists Sosbe as the defendant, refers to a violation of "TMC 335.01A2 PERMIT OPERATION WITHOUT LICENSE[,]" and includes an entry showing that Sosbe pleaded guilty at her initial appearance and without counsel (although the docket does not specify the charge that Sosbe pleaded to). The third document is a traffic citation, labeled with the case number of the 2014 traffic case, issued to Sosbe in 2014 for "allowing an un-licensed operator" in violation of "TMC 335.01a2." The affidavit accompanying the citation indicates that Sosbe "allowed an unlicensed driver to operate her vehicle knowing that the person Jason Brilla did not have a license. * * * [Sosbe] stated that her vehicle was suspose [sic] to be broke [sic] down and no one was suspose [sic] to be driving her truck." The citation apparently resulted from Brilla's involvement in an accident while driving a truck that Sosbe owned at the time. The fourth document is a list of case numbers and charges that each indicate that the defendant is "BRILLA, JASON." The document does not indicate the disposition of those cases (i.e., it does not show whether the Jason Brilla charged in those cases was actually convicted of the listed charges). The final document is the docket sheet from a 2012 criminal case that lists Brilla as the defendant, refers to a violation of "TMC 525.21A FALSE INFORMATION TO A POLICE OFFICER[,]" and lists a disposition

4.

of "Off Docket." There is no indication that Brilla pleaded to or was convicted of a crime in the 2012 case.[1]

{¶ 8} The trial court granted Sosbe's motion for summary judgment. In its judgment entry, the court first found that Sosbe was entitled to summary judgment on Sandelin's negligence claim because Sandelin conceded that Sosbe was not driving the truck that caused the accident.[2]

{¶ 9} The court went on to determine that Sosbe's deposition testimony showed that she did not give Brilla express permission to drive her truck the day of the accident. Further, Sosbe and Brilla living together, the place Sosbe kept her keys, Sosbe not reporting the truck stolen, Brilla calling Sosbe after the accident, and one documented instance of Sosbe allowing Brilla to drive her vehicle five years before the accident were "insufficient to support an inference that [Sosbe] negligently entrusted her vehicle to Brilla * * *." In reaching its conclusion, the trial court commented that it

views [Sosbe's] 2014 conviction as a lesson learned which made her more aware of the consequences of her actions when she allows Brilla to drive her vehicles without a valid driver's license and was more likely than

_____

[1] Sandelin originally included the complaint from the 2012 case as an exhibit. However, when she later moved to substitute certified copies of the municipal court documents for the uncertified versions included with her response to Sosbe's motion for summary judgment, she did not include that complaint. Instead, she asked the trial court to substitute the docket sheet of the 2012 case for the complaint, which the trial court did.

[2] Sandelin is not appealing this portion of the trial court's decision.

5.

not a deterrent for [Sosbe] than a pattern of behavior especially since it appears that the May 1, 2019 accident was the first time that Brilla disobeyed [Sosbe's] instruction not to drive her vehicle.

Ultimately, the trial court found, Sandelin failed to show a genuine issue of material fact on the first element of a negligent entrustment claim and Sosbe was entitled to summary judgment.

{¶ 10} Sandelin now appeals, raising one assignment of error:

The trial court erred when it granted summary judgment in favor of Appellee, Jackie Sosbe.

## II. Law and Analysis

{¶ 11} In her assignment of error, Sandelin argues that the trial court erred in granting summary judgment to Sosbe because there are issues of material fact regarding the elements of her negligent entrustment claim. Specifically, she contends that (1) the circumstances surrounding Brilla's use of the truck on the morning of the accident could reasonably show that he had Sosbe's implied permission to drive it; (2) the evidence of Brilla's suspended license and his history of driving infractions show that he was an incompetent driver; and (3) public policy supports denying summary judgment because the trial court's decision, based on its "unfound assumption regarding the facts[,] * * * negatively affects the motoring public."

{¶ 12} In response, Sosbe argues that the fact of her prior conviction for allowing Brilla to drive her vehicle is insufficient—standing alone—to raise a genuine issue of

6.

material fact regarding Brilla's permission to drive her truck on the morning of the accident, and nothing else that Sandelin presented showed that Brilla had Sosbe's implied, actual permission to drive the truck. She also argues that Sandelin failed to present any evidence that Brilla was an incompetent driver at the time of the accident, that she knew about any incompetence, or that her entrustment of the truck to Brilla (if she did, indeed, entrust the truck to him) caused Sandelin's injuries. Finally, Sosbe argues that Sandelin did not identify any public policy that is offended by the trial court's summary judgment decision.

## A. Summary judgment standard

{¶ 13} An appellate court reviews summary judgment de novo, employing the same standard as the trial court. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The court can grant a motion for summary judgment only when the moving party demonstrates:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

7.

{¶ 14} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." Civ.R. 56(C). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Sandelin did not raise issues of fact regarding permission.

{¶ 15} In her complaint, Sandelin alleged that Sosbe negligently entrusted her truck to Brilla on the morning of the accident. To prove a claim for negligent entrustment of a motor vehicle, the plaintiff must show that (1) the driver operated the vehicle with the owner's permission, (2) the driver was incompetent to operate the vehicle, (3) the owner knew—either through actual knowledge or knowledge implied

8.

from facts known at the time of entrustment—that the driver was unqualified or incompetent to operate the vehicle, and (4) the owner's negligent entrustment caused the plaintiff's injury. *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 17, citing *Gulla v. Straus*, 154 Ohio St. 193, 93 N.E.2d 662 (1950), paragraph three of the syllabus; and *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 36. Failure to prove any element is fatal to a negligent entrustment claim. *Id.*

{¶ 16} We can determine this appeal based on the first element—i.e., whether Brilla had Sosbe's permission to drive her truck. Permission in the context of a negligent entrustment claim can be either express or implied. *Keeley v. Hough*, 11th Dist. Trumbull No. 2004-T-0038, 2005-Ohio-3771, ¶ 22. Either way, "'permission must be *actual*.'" (Emphasis added.) *Romstadt v. Garcia*, 2017-Ohio-7277, 96 N.E.3d 952, ¶ 16 (6th Dist.), quoting *Continental Ins. Co. v. Whittington*, 2d Dist. Darke No. CA1295, 1993 WL 26746, *11 (Feb. 4, 1993), *rev'd on other grounds*, 71 Ohio St.3d 150, 642 N.E.2d 615 (1994).

{¶ 17} To support her argument that a genuine issue of material fact remains regarding whether Sosbe gave Brilla express or implied permission to drive her truck the day of the accident, on appeal Sandelin cites the keys to Sosbe's truck being "readily available" to Brilla and evidence (in the form of the 2014 traffic case against Sosbe) that not only had Brilla driven Sosbe's vehicle in the past, but that Sosbe had permitted him to do so. Her motion for summary judgment was a bit more detailed. In the trial court,

9.

Sandelin cited (1) Brilla's "access to the keys[,]" which were kept on a table in the living room; (2) Brilla calling Sosbe after the accident to tell her about it; (3) exhibits pertaining to the 2014 traffic case against Sosbe for permitting an unlicensed operator—Brilla—to drive her vehicle; (4) Sosbe's decision not to report the truck as stolen; and (5) what Sandelin classifies as Sosbe's "self-interested statements which [Sosbe] contends relieve her of liability and responsibility for the negligent entrustment claim."

{¶ 18} In response, Sosbe points out that the trial court considered the evidence that Sandelin primarily relies on—i.e., the 2014 traffic case exhibits—and, assuming that those exhibits refer to the Jackie Sosbe in this case, they do not contradict Sosbe's testimony that, about two years into their relationship—i.e., after the 2014 traffic case— she forbade Brilla from driving her vehicles if he did not have a license. Sosbe also points out that nothing contradicts her testimony that she was unaware of Brilla violating this prohibition before May 1, 2019. She contends that this is not "a pattern of behavior" that would support a finding that Brilla had her implied, actual permission to drive her truck on May 1, 2019. Further, Sosbe says that (1) her failure to report the truck as stolen does not support a finding of implied permission because she did not know the truck was missing until after the accident, and by that point, she believed that the truck was in police custody; (2) Brilla's access to the keys, standing alone, does not support an inference of implied permission; and (3) Sandelin did not present any evidence that Sosbe's "testimony is merely self-serving and not credible due to bias, * * *" and self-

serving testimony that does not baldly contradict other evidence is permissible on summary judgment.

{¶ 19} To support their positions, the parties cite several cases. Sandelin first cites *Keeley*, 11th Dist. Trumbull No. 2004-T-0038, 2005-Ohio-3771. In that case, divorced spouses lived together, and wife owned a car and a truck that she kept at the house. *Id.* at ¶ 2, 18. Husband had not had a valid driver's license for decades, and wife told him that he was not allowed to drive the vehicles. *Id.* at ¶ 3, 21. Regardless, husband regularly drove the car, which wife knew about. *Id.* at ¶ 18. Husband testified that the only time he drove the truck was the day of the accident underlying the case. *Id.* at ¶ 19. Additionally, about five years before the accident, husband drove a different truck that wife owned and caused an accident; wife responded by telling him that he could not drive her vehicles. *Id.* at ¶ 20. Wife threatened to call the police and report husband for stealing her car, but never actually did. *Id.* at ¶ 24. Although husband claimed that he copied the truck key without wife's knowledge, wife testified that he used a key that she had hidden behind the truck's license plate, which she left there despite knowing that husband had previously found and used a key hidden on the car. *Id.* at ¶ 25.

{¶ 20} Based on this information, the Eleventh District concluded that there was a genuine issue of material fact regarding whether wife gave husband implied permission to drive the truck on the day of the accident because "[wife] knew [husband] had a propensity to drive her vehicles in the face of her instructions not to do so. This course of events occurred for more than five years. In addition, knowing that [husband] had used a

11.

Hide-A-Key to operate her Cadillac, [wife] left the Hide-A-Key for her pickup truck in a location that was accessible by [husband]." *Id.* at ¶ 48.

{¶ 21} Sandelin also cites *Stearns v. Elam*, 8th Dist. Cuyahoga No. 85925, 2005-Ohio-4995. In this case, someone took husband and wife's van and caused an accident. *Id.* at ¶ 3. The owners' nephew was later identified as the suspected driver. *Id.* at ¶ 4. In reaching its decision, the Eighth District considered that: (1) husband and wife did not call the police when they discovered that their van was missing, "inferring that [they] knew or suspected who took the van"; (2) the driver was the owners' nephew, and the owners knew that nephew's license was suspended; (3) husband said that he "always" took the keys out of the van when he parked it at home; (4) the first place husband looked for the van was nephew's home; and (5) nephew called the owners early in the morning (after the accident) "in a highly agitated state" and "upset and nervous" and told wife that he "'heard there was an accident.'" *Id.* at ¶ 10. The appellate court concluded that these facts "raise colorable questions regarding the [owners'] blanket denials, and the trier of fact could find they create an inference that the use of the car by [nephew] was with permission." *Id.*

{¶ 22} For her part, Sosbe cites *Shapiro v. Barden*, 8th Dist. Cuyahoga No. 79267, 2001 WL 1608940, (Dec. 13, 2001). In that case, son was involved in an accident while driving mother's car. *Id.* at *1. Mother testified that son took the car on the day of the accident without her knowledge or permission, she had forbidden son from using her car when his license was suspended, and she did not know that son took the car until after the

12.

accident. *Id.* at *2. Son also testified that he took mother's car without her permission. *Id.* at *3. Appellants argued that mother and son had "a tacit understanding" that son could use the car for occasional short trips because son used the car in the past (when he had a valid license) and mother parked the car in the driveway that night. *Id.* The Eighth District determined that the appellants' evidence that son used mother's car in the past did "not refute [mother's] evidence that she instructed [son], upon his license being suspended, that he was no longer allowed to drive her car[,]" so no genuine issues of material fact remained. *Id.*

{¶ 23} Finally, Sosbe cites *Romstadt*, 2017-Ohio-7277, 96 N.E.3d 952. There, son was involved in an accident while driving mother's van. *Id.* at ¶ 7. At the time of the accident, son lived with mother. *Id.* Mother owned a car and a van, but exclusively drove the car. *Id.* at ¶ 11. Son did not have a driver's license because he had failed to pay child support, and was twice cited for driving with a suspended license, once about eight years before the accident and once about five years before. *Id.* There was no evidence that either of the earlier traffic cases involved one of mother's vehicles. *Id.* at ¶ 27. Mother knew that son's license was suspended and told him that he could not drive her vehicles, but did not hide the keys to her van, which were stored on a hook in the kitchen. *Id.* at ¶ 11, 13. Son did not ask mother's permission before taking the van the day of the accident; although mother was home, he "spontaneously" grabbed the keys to the van and left to give his girlfriend a ride to work. *Id.* at ¶ 14. Mother did not know that son took the van until after the accident, when he called her to tell her about the it.

13.

*Id.* at ¶ 30. Regardless, mother did not file a police report when she learned that son had taken the van. *Id.* Mother and son each testified that son had not previously taken mother's vehicles while his license was suspended. *Id.* at ¶ 16.

{¶ 24} In affirming summary judgment for mother, we found that son's access to the van keys, alone, was insufficient to create a genuine issue of material fact. *Id.* Further, we said that inconsistencies between mother's and son's testimony regarding how long they had lived together and how long son's license had been suspended were not material to the dispute about whether mother negligently entrusted her van to son. *Id.* at ¶ 23. Finally, we agreed with the appellant that mother's testimony was self-serving (because she denied liability on appellant's claims), but that self-serving testimony, in and of itself, was not impermissible. *Id.* at ¶ 25. Rather, self-serving testimony that "baldly contradicts the evidence offered by the moving party is insufficient to create a genuine issue of fact." *Id.* Taken together, we found that the evidence did not raise an issue of fact regarding mother's implied permission for son to drive the van on the day of the accident. *Id.* at ¶ 27.

{¶ 25} *Romstadt* is most closely analogous to this case. In that case, as here, the owner and driver lived together, the driver's license was suspended, the keys were readily accessible, the owner explicitly denied the driver permission to use her vehicle, there was no evidence that the driver had used the vehicle at any other time while permission was revoked, the driver took the car while the owner was home (albeit otherwise occupied), the owner did not know about the missing car until after the accident, and the owner did

14.

not report to police that the vehicle was stolen. Sandelin's case differs somewhat: we have some evidence that Brilla used one of Sosbe's vehicles before she revoked his permission and while his license was suspended (which was absent in *Romstadt*) and have only Sosbe's testimony regarding permission (as opposed to both the owner's and the driver's).[3] Sandelin's brief focuses only on Brilla's prior use of Sosbe's vehicle.[4]

{¶ 26} Ultimately, these differences are immaterial. The evidence in the record shows that, approximately two years after Sosbe and Brilla started dating—i.e., *after* the 2014 traffic case—Sosbe told Brilla that "he wasn't allowed to drive [her] vehicles if he didn't have a license and [she] wasn't going to be in trouble for any of his mistakes." There is nothing in the record that contradicts this statement or indicates that Brilla disobeyed Sosbe's directive until the day of the accident. Considering this information, we find that an isolated incident of Brilla driving Sosbe's vehicle, remote in time from the accident underlying this case, and before Sosbe explicitly revoked Brilla's permission to drive her vehicles, does not raise a genuine issue of material fact regarding Brilla's implied permission to drive Sosbe's vehicle on the day of the accident.[5]

---

[3] Sosbe argues that we should disregard Sandelin's evidence of the 2014 traffic case for a variety of reasons. We do not reach this issue because it would not affect our decision.

[4] Although Sandelin raised the issue of Sosbe's "self-interested statements which she contends relieve her of liability and responsibility for the negligent entrustment claim" in the trial court, she did not pursue that argument on appeal.

[5] Sandelin objects to the trial court's comment that the 2014 traffic case was a "lesson learned" for Sosbe as "an assumption which is improper." Assuming that this comment exceeded the scope of summary judgment, any error was harmless because it would not

15.

{¶ 27} Sandelin cites to *Keeley* for the proposition that "other appellate courts have found an owner's knowledge the driver had previously driven the vehicle without a license, showed the owner merely 'looked the other way'." *Keeley*, 11th Dist. Trumbull No. 2004-T-0038, 2005-Ohio-3771, at ¶ 24. *Keeley* is distinguishable, however, because there were "multiple known instances" of the unlicensed driver using the owner's car. *Id.* It was the fact that the driver used the car "multiple" times—despite the owner explicitly telling him not to—and the owner's knowledge of the continued use that led the *Keeley* court to conclude that a reasonable person could believe that the owner "merely 'looked the other way' when she found out [driver] was driving her vehicles." *Id.* That is not the case here.

{¶ 28} *Stearns* is also distinguishable. There, the driver of the vehicle was initially unknown, and the owners claimed in their summary judgment motion that "their van was taken without their permission by an unknown person." *Stearns*, 8th Dist. Cuyahoga No. 85925, 2005-Ohio-4995, at ¶ 3, 5. In other words, the owners were attempting to avoid liability by claiming that they did not know who took their vehicle, so they could not possibly have given that person permission, which made facts supporting what the owners knew about the driver material to the resolution of the case. Thus, the facts that Sandelin points to as showing a factual issue in her case—i.e., the owners not

---

change the outcome. *See* Civ.R. 61; *Allen v. Niehaus*, 1st Dist. Hamilton Nos. C-000213 and C-000235, 2001 WL 1589169, *10 (Dec. 14, 2001) ("Without an outcome-determinative effect, [] errors are deemed harmless.").

filing a police report, the driver being related to the owners and calling them after the accident, the owners knowing that the driver's license was suspended—had a different significance in *Stearns* (i.e., they went to the owners' knowledge of the driver's *identity* as opposed to whether the driver had the owners' *permission*). *See id.* at ¶ 10. Nothing in this case raises the same concerns or makes Sosbe's failure to report the truck stolen and Brilla's call to Sosbe after the accident more significant than the other facts relating to implied permission. *See Romstadt*, 2017-Ohio-7277, 96 N.E.3d 952, at ¶ 30 (distinguishing *Stearns* in a case where the owner knew who took the vehicle).

{¶ 29} Based on the evidence before us, there is nothing to indicate that Sosbe gave Brilla actual permission to drive her truck—either express or implied—on the day of the accident. Because Sandelin has failed to point to a genuine issue of material fact, we find that the trial court properly granted summary judgment to Sosbe. Accordingly, Sandelin's assignment of error is not well-taken.

### III. Conclusion

{¶ 30} Based on the foregoing, the July 25, 2022 judgment of the Lucas County Court of Common Pleas is affirmed. Sandelin is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

17.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                           _____
                                                                    JUDGE

Christine E. Mayle, J.

Charles E. Sulek, J.                           _____
CONCUR.                                                         JUDGE

                                                          _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.